# Fairhope Single Tax Corporation *v.* Melville.

*Bill to Dissolve an Organization and for a Receiver.*

(Decided June 10, 1915. 69 South. 466.)

1. *Taxation; Constitutional Provision; Single Tax.*—Acts 1903, p. 342, now Section 3573, Code 1907, did not attempt or contemplate the application or enforcement of a single tax system in violation of any constitutional provision, Federal or State, as it did not effect any change in the tax systems or tax provisions, but left its taxable property and that of its members subject to the same system of taxation as other property in this state.

2. *Corporations; Charter Powers; Implied.*—Under Acts 1903, p. 342, only the powers conferred, including those necessarily implied from those expressly conferred, can be exercised by a corporation organized thereunder.

3. *Constitutional Law; Construction; Presumption.*—Until it appears beyond a reasonable doubt that an enactment is violative of the state or Federal constitution, the presumption is that such enactment is constitutionally valid.

4. *Constitutional Law; Constitution.*—A constitution is a charter of government deriving its whole authority from the consent of the governed.

5. *Corporations; What Are.*—A corporation is but a convenience, a facility, possessing only the powers conferred upon it by its creator and subject to the valid, appropriate measures of control, surveillance and regulations which government may impose to the anticipated or accepted advantage and welfare of the government, of the corporation, its members, the public, and those otherwise affected by its activities.

6. *Constitutional Law; Construction.*—The court can only pronounce an enactment of the legislature violative of the Constitution when it is obnoxious to the express provisions thereof, or to the necessary implication afforded by or flowing from such provisions, and then only after it is found not to be fairly susceptible of a construction which would avoid such violation.

7. *Same; Police Power.*—Enactments will not be pronounced void because violative of the judicially conceived spirit of the Constitution, or contrary to first principles of common or natural rights, or opposed to public policy.

8. *Taxation; Single Tax; Incorporation; Police Power.*—Section 3573, Code 1907, under which a single tax corporation was incorporated, whose constitution provided for the establishment of a community which should own and lease its own land, and, without infringing any governmental rule of taxation, as between itself and its members, apply and demonstrate the single tax principle of taxation, whereby the corporation should appropriate rent by taxation, could not be condemned on the ground of its opposition to public policy; nor is such act violative of article 1, section 8, Constitution of the United States, or of section 9 thereof.

9. *Taxation; Income Tax.*—Nor is such section violative of the sixteenth amendment of the Constitution of the United States.

10. *Same.*—Such statute, under which incorporations were regularly incorporated, and which owned and leased land to apply and demonstrate the correctness of the single tax principle of taxation, was not violative of either Sections 211, or 212, or 229, or 232, or 259 of the Constitution of the State of Alabama.

11. *Corporations; Dissolution; Bill by Member.*—A stockholder of a corporation organized under section 3573, Code 1907, while some of the activities of the corporation were profitable, and it was solvent and out of debt, could not maintain a bill for its dissolution on the ground of its already accomplished or impending failure financially or otherwise, since the act does not require the concurrent exercise of all of its powers, or the profitable exercise of any, and since it would be presumed, nothing appearing to the contrary, that its governing authority would not needlessly permit its dissolution by the absorption of its assets in unprofitable operations.

12. *Injunction; Payment of Taxes.*—Such a bill could not be maintained to enjoin the corporation or its agents from paying taxes upon the unrented and unprofitable land of the corporation so long as the article of its Constitution expressly contemplated the payment of all taxes out of its general fund.

13. *Same; Bills; Facts or Conclusions.*— In such a bill a prayer that the corporation, the individual members thereof, its executive counsel, and all of its officers and agents be enjoined from fixing

the rent under complainant's lease on any basis other than the actual value of the land, exclusive of improvements, and from devoting any of the rents to purposes other than to purposes mutually beneficial to all the lessees as to fixing and using rents, should have more fully averred the fact upon which the conclusions were predicated.

14. *Corporations; Dissolution.*—Even if wrongs of which the member might complain, such ground of relief could be effected by the corporate authorities upon advisement and request for their correction, but could not be had under a bill, the allegations of which were not sufficient in respect to the particular averment showing an effort to have the wrongs corrected by the corporate authority or the futility of an appeal to them.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by A. J. Melville against the Fairhope Single Tax Corporation, for a dissolution thereof, and for other relief. From a decree overruling demurrers to the bill, respondent appeals. Reversed and remanded.

GREGORY L. & H. T. SMITH, and WEBB & McALPINE, for appellant.

STEVENS, McCORVEY & McLEOD, for appellee.

McCLELLAN, J.—The following act (Acts 1903, p. 342) was approved, and, if valid, became operative on October 1, 1903: "An act to provide for the organization and regulation of corporations not for pecuniary profit in the sense of paying interest or dividends on stock, but for the benefit of its members through their mutual co-operation and association.

"Section 1. Be it enacted by the Legislature of Alabama, that ten or more persons desiring to associate themselves together, not for pecuniary profit in the sense of paying interest or dividends on stock but for mutual benefit through the application of co-operation, single tax, or other economic principles, may become a body corporate in the manner following:

"Sec. 2.   The parties proposing to form such corporation shall file with the probate judge in the county in which it proposes to establish itsef, a declaration in writing, setting out the name of said proposed corporation, the names of the charter members, and the purposes of said corporation.

"Sec. 3.   Upon the filing of such declaration the judge of probate shall issue to such corporation a charter which shall be perpetual—subject to revocation at any time by the Legislature of Alabama.

"Sec. 4.   It may elect such officers as it may deem necessary, in such manner and for such terms as it may provide and remove the same at any time, and adopt such constitutions and by-laws as it may see fit not in conflict with the Constitution and laws of this state.

"Sec. 5.   Such corporation shall have the power to buy, sell, and lease and mortgage real estate, to build and operate wharves, boats, and other means of transportation and communication, build, erect and operate waterworks, electric lighting and power companies, libraries, schools, parks, and do any other lawful thing, incident to its purpose, for the mutual benefit of its members; and may admit such other persons to participate in its benefits as it may see fit and upon such conditions as it may impose."

The like provisions appear in Code, § 3573.

The Fairhope Single Tax Corporation was undertaken to be made a body corporate, in virtue of and in accordance with the authority of the above enactment, on August 9, 1904.   The declaration of incorporation contained these recitals or assertions:   "We, the undersigned, desiring to form a corporation under the provisions of an act for the organization of corporations

not for pecuniary benefit, in the sense of paying interest or dividends on stock, but for the benefit of its members through their mutual co-operation and associatiton, approved October 1, 1903, do hereby declare:

"The purpose of said corporation is to demonstrate the beneficiency, utility and practicability of the single tax theory, with the hope of its general adoption by the governments of the future, in the meantime securing for ourselves and our children and associates the benefits to be enjoyed from its application as fully as existing laws will permit, and to that end to conduct a model community free from all forms of special privileges, securing to its members therein equality of opportunity, the full reward of its individual efforts and the benefits of co-operation in matters of general concern, holding all land in the name of the corporation and paying all taxes on the same and improvements and other personal property of lessees thereon, charging the lessees the fair rental value, and in the prosecution of its plans for the general welfare of its members to do and perform all the acts and exercise all the powers permitted under section 5 of said act."

The charter of the incorporation, omitting presently unimportant features, contains these provisions: "* * * I do hereby declare the parties aforesaid, their successors and associates, duly incorporated under the name of the Fairhope Single Tax Corporation: that the existence of said corporation shall be perpetual subject to the right of revocation by the Legislature. Said corporation has the power to elect such officers as it may deem necessary in such manner and for such terms as it may provide, and remove the same at any titme, and adopt such constitution and by-laws as it may see fit, not in conflict with the Constitution and laws of this

state. Such corporation shall have the power to buy, sell and lease real estate, to build and operate wharves, boats and other means of transportation and communication, build, erect and operate waterworks, electric lighting and power companies, libraries, schools, parks and do any other lawful thing incident to its purpose for the mutual benefit of its members, and may admit, such other persons to participate in its benefits as it may see fit to upon such conditions as it may impose."

The Constitution adopted by the incorporation embraces these provisions: "Believing that the economic conditions under which we now live and labor are unnatural and unjust, in violation of natural rights, at war with the nobler impulses of humanity, and opposed to its highest development, and believing that it is possible by intelligent association, under existing laws, to free ourselves from the greater part of the evils of which we complain, we, whose names are hereunto subscribed, do associate ourselves together and mutually pledge ourselves to the principles set forth in the following constitution.

"Its purpose shall be to establish and conduct a model community or colony, free from all forms of private monoply, and to secure to its members therein equality of opportunity, the full reward of individual efforts, and the benefits of co-operation in matters of general concern.

"Any person over the age of eighteen years, whose application shall be approved by the executive council and who shall contribute to the corporation one hundred dollars, shall be a member of the corporation: Provided, that on petition of ten per cent. of the qualified membership filed with the secretary within thirty

days after action on any applicant by the executive council, such application shall be submitted to a vote of that membership.

"There shall be no individual ownership of land within the jurisdiction of the corporation, but the corporation shall hold as trustee for its entire membership the title to lands upon which its community shall be maintained.

"Its lands shall be equitably divided and leased to members at an annually appraised rental which shall equalize the varying advantages of location and natural qualities of different tracts and convert into the treasury of the corporation, for the common benefit of its members, all values attaching to such lands, not arising from the efforts and expenditures of the lessees.

"Land leases shall convey full and absolute right to the use and control of lands so leased and to the ownership and disposition of all improvements made or products produced thereon so long as the lessee shall pay the annually appraised rentals provided in the foregoing section and may be terminated by the lessee after six months' notice in writing to the corporation and the payment of all rent due thereon.

"Leaseholds shall be assignable, but only to members of the corporation. Such assignments must be filed for record in the office of the secretary, and the person to whom the same is assigned thereby becomes the tenant of the corporation.

"The corporation shall have a prior lien on all property held by any lessee upon the lands of the corporation for all arrearages of rent.

"If any lessee shall exact or attempt to exact from another a greater value for the use of the land, exclusive of improvements, than the rent paid by him to

the corporation, the executive council shall, immediately upon proof of such fact, increase the rental charge against such land to the amount so charged or sought to be charged.

"No taxes or charges of any kind other than heretofore provided for shall be levied by the corporation upon the property, or persons of its members.

"All taxes levied by the state, county or township on the property of the corporation or any of its members held within its jurisdiction, moneys and credits excepted, shall be paid out of the general fund of the corporation."

Two forms of leases, types of which are exhibited with the bill, have been used by the corporation since its organization, and approximately 266 leases, to members and non-members, were in effect when this bill was filed. The corporation owned, at first, about 140 acres of land, and subsequently, mainly by donations, notably that of 2,200 acres made by Joseph Fels, now deceased, it became the owner of about 4,000 acres of land. Some of the land is unimproved and unleased, and some of its land, leased and unleased, are in the town of Fairhope, and others outside thereof.

The complainant, appellee, is a member of the organization and a tenant of the corporation. The contract of lease in general use by the corporation landlord contains this stipulation:

"The said lessees, his heirs and successors, shall pay to the Fairhope Single Tax Corporation, its successors and assigns, the annual rental value of said land (described in the instrument), exclusive of his improvements thereon, to be determined by the said corporation through its executive council or board of directors, under its avowed principle of so fixing the rentals of

its lands as to equalize the varying advantages of lo-
cation and natural qualities of its different tracts and
convert into the treasury of the corporation, for the
common benefit of its lessees, all values attaching to
such lands, exclusive of improvements thereon."

The lease further stipulates for the discharge of all
taxes ("moneys and credits excepted") laid by law up-
on the lessees, out of the common fund. Provision is al-
so made in the lease for the contingency of a dissolu-
tion of the corporation and the thereupon necessity to
distribute or to divide its assets among the lessees; the
purchase price in such circumstances being the actual
value of the whole or a part of the leased area exclus-
ive of the improvements thereon. Further provision
is made in the lease for an arbitral valuation of the
leased land and of the improvements thereon.

The complainant's (appellee's) bill proceeds on two
alternative theories and for relief appropriate to each.
The first is to have the appellant declared a partner-
ship that was dissolved by the death of one of its mem-
bers and to distribute its assets; and this as the con-
sequence of the approval of the appellee's assertion
that the act under which the incorporation was under-
taken to be effected was and is invalid, because in vio-
lation of the Constitutions federal and state, or of the
public policy prevalent in this state and in this nation,
in respect of the methods and systems of taxation,
which are immediately opposed to the theory. The oth-
er alternative, predicated of the complainant's failure
to sustain the theory just indicated, is rested upon the
idea that the corporation has failed and must fail in
its purpose to demonstrate the "beneficiency, utility
and practicability of the single tax, with the hope of
its general adoption by the governments of the future,"

and that the corporation's affairs are being so mismanaged as to unjustifiably impose upon lessees hardship, discrimination, injustice, and oppression. It is to be readily conceded that any legislative attempt to apply or to enforce the "single tax system" would be absolutely void under the Constitution of Alabama. The basic idea of the "single tax," as a concrete suggestion, was presented about the middle of the eighteenth century, by French writers on economics. Considerations of a philanthropic nature chiefly inspired the efforts of these men. The late Henry George, doubtless moved by the consideration, appropriated the conception thus introduced, and in his notable book entitled Progress and Poverty (1879) gave to the theme and to theory of single tax widespread prominence, and therein reduced its statement, and the reasons commanding his approval of the theory and the proposed system, to a more practical form. It is to be presumed that in the enactment (1903) before set out our lawmakers had reference, in their employment of the descriptive term, "single tax principles," to the theory and underlying conceptions of single tax to the advocacy of which Henry George devoted his marked and unusual abilities. Without assuming to at all elucidate the subject, it will suffice to say, in aid of the interpretation of our enactment of 1903, that Henry George's theory and his proposed system of taxation comprehended the governmental appropriation of the rents of all lands in the jurisdiction as the expression of the sovereign power of taxation to afford the government's maintenance and sustenance, and the substantial restriction of the taxing power, for those purposes, to that single source, thus, while leaving the established system of private ownership of land undisputed, to

work out the system of single tax through the authoritative control and appropriation of the economic value of land. The object of the system the author proposed was to approach as near as might be, in view of his avowed purpose not to disturb the established order with respect to the private ownership of practically all of the land, the public appropriation of all lands, in accordance with the fundamental principles thus stated by him, "We must make land common property" (Progress and Poverty, p. 295), by exacting under the ostensible power of taxation the economic value of all the lands, which he held to be the rentals equal in amount to the actual value of the use of the lands exclusive of their improvements.

At page 364 of his book it is said: "I do not propose either to purchase or to confiscate private property in land. * * * We may safely leave them (landowners) the shell, if we take the kernel. It is not necessary to confiscate land; it is only necessary to confiscate rent."

Definitive of the character and sovereignty of the power his proposal contemplated, he concludes, on the same page, to condense his theory's statement into this systemic doctrine, "appropriate rent by taxation," and thereupon the author affirms this: "In this way, the state may become the universal landlord without calling herself so, and without assuming a single new function. In form, the ownership of land would remain just as now. * * * For, rent being taken by the state in taxes, land, no matter in whose name it stood, or in what parcels it was held, would be really common property, and every member of the community would participate in the advantages of its ownership."

An ultimate purpose of the proposal is "to abolish taxation save that upon land values." Progress and Poverty, p. 365.

(1)    Obviously, the enactment of 1903, and its counterpart in the Code of 1907, does not contemplate or attempt the application or enforcement of a single tax system. It does not effect a change in any degree of tax systems or tax provisions, then or subsequently existing, by the imposition through that sovereign power of any feature of the single tax system as Henry George has set forth his proposal in that regard. The taxable property of an incorporation created by that authority, and all property taxable as that of individuals, who are members or lessees of the corporation, are subject to the same system of taxation, as far as the government is concerned, that any other property is subject to in this state. So the enactment affords no possible basis for a conclusion that it is invalid in consequence of an effort to actually institute a tax method or system offensive to constitutional provisions, federal or state.

(2,3)    Section 5 of the enactment enumerates the powers conferred upon a corporation organized under that authority. Only the powers conferred, including the powers necessarily implied from those expressly conferred, may be exercised by an institution created by and under a general law authorizing incorporations of that character.—*Granger's Ins. Co. v. Kamper,* 73 Ala. 435, 341. The presumption is that enactments are constitutionally valid; and this presumption prevails until it appears beyond a reasonable doubt that the enactment under consideration is violative of the organic law of the state or of the nation.—*State ex rel. v. Greene,* 154 Ala. 249, 254, 46 South. 268; *State ex rel.*

*v. Board of Com'rs,* 180 Ala. 489, 499, 61 South. 368. Consistent with this presumption it must be accepted that none of the powers in section 5 of the enactment comprehend the authorization of the corporation to exercise any power or to do any act inconsistent with the Constitutions.—*Jackson v. Bham Mach. Co.,* 154 Ala. 464, 470, 45 South. 660. The phrase, in section 5, "and do any other lawful thing, incident to its purpose, for the mutual benefit of its members," cannot be interpreted as authorizing any action by the incorporated entity inconsistent with the organic laws, unless there is to be accorded to the word "purpose" in that phrase an effect which, when read in connection with the broad object of the enactment, would authorize the exercise of powers beyond those, obviously unobjectionable, enumerated in section 5. While this statement may import a perhaps undeserved favor to the contention appellee makes in this connection, yet it might be defended as upon the fact that such enactments, authorizing corporations, are generally accepted as conferring all powers "incidental to the (their) very existence" of the institutions thus and thereby created. —*Granger's Ins. Co. v. Kampor, supra.* So, without assuming to exclude, or deny efficacy to other considerations that would probably lead to the same conclusion with respect to the constitutionality vel non of the enactment of 1903, we treat that legislation as if it conferred every power the exercise of which would necessarily and without offending the Constitution contribute to the promotion of the purpose of the enactment, thus casting the present inquiry into this form: Did the enactment contemplate and undertake the authorization of corporate entities for a purpose inconsistent with the Constitutions?

Giving due and deserved effect to the presumption stated, that the legislative department does not intend the infraction of the Constitutions through the exercise of its functions, as well as to the obvious fact that no change in the system of taxation, as far as governments are concerned, was contemplated or attempted, it is to be conceded, for the occasion, that the purpose of the lawmakers, as shown by this enactment, was to authorize the creation of corporations that would, as between the members thereof and those contractually interested in the corporation's activities, observe and apply methods that consist with, demonstrate, or illustrate the principles described in the first section of the enactment, the approval and adoption of the principles or the methods being completely subject to individual will or desire, and thus affirmatively exonerating the enactment from the charge of imposing or exerting in the premises any governmental authority, in respect to taxation, inconsistent with systems or methods of taxation provided in the Constitutions, and also negativing a legislative purpose to impose or to exert any governmental authority in conflict with the Constitutions in respect of taxation. The question then is: Is an enactment offensive to the Constitutions which authorizes the creation of a corporation to apply—as between individuals and the corporation, and without denial or violation of, or infringement upon, any governmental rule or mandate—principles of taxation that, if attempted to be translated into a rule of or mandate for governmental action, would offend the organic laws?

(4) An affirmative response to this question would necessarily involve an affirmation of the existence in our Constitutions of restrictions of a profound and

far-reaching character and effect—restrictions that, if recognized to be of constitutional authority, might, if not inevitably, lead to hitherto unanticipated restraints upon the primal rights and immunities, generally heretofore accepted as being guaranteed by the organic laws. The Constitutions are charters of governments, deriving their whole authority from the governed. By necessarily conclusive provisions incorporated in them the entertainment of any notion that the fundamental laws are immutable is entirely precluded. Freedom of speech, the right of assembly and petition, and the orderly processes designed to effect the revision or amendment of the Constitutions are among the provisions of the Constitutions particularly emphasizing the idea that these fundamental instruments were not established in the immutable expressions of supreme law. So it is trite to say: The right to change necessarily presupposes and recognizes the even higher right, to be ever lawfully exercised, of the governed, or of any part of the governed, to convene, to discuss, to consider, and to experiment, without offending or violating established law or personal or property rights, as the proponent, critic, or idealist may conceive to be desirable to effect the improvement of the government, either in itself or in its relation to and influence upon the welfare of those subject to its authority. So the organic laws cannot be regarded as condemning or restraining, or inviting the restraint or condemnation of, individual conception, propaganda, or the illustration or demonstration of ideas which offend no valid prohibitive or regulatory law, or invade or violate no personal or property right of another. Except as forbidden or restrained by organic law particularly applicable to the artificial entities called corporations, it would

seem to be the assertion of a self-evident truth to say: That which an individual may lawfully do with or about his own possessions, a corporation may be created and authorized by law to do with its own possession; Marshall, in the *Dartmouth College Case*, having thus defined and described a corporation: "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality (now restricted by the Constitution of Alabama), and, if the expression may be allowed, individuality properties by which a perpetual succession of many persons are considered as the same, and may act as a single individual. They enable a corporation to manage its own affairs, and to hold property without the perplexing intricacies, the hazardous and endless necessity, of perpetual conveyances for the purpose of transmiting it from hand to hand. It is chiefly for the purpose of clothing bodies of men, in succession, with these qualities and capacities, that corporations were invented, and are in use. By these means, a perpetual succession of individuals are capable of acting for the promotion of the particular object, like one immortal being."

(5)  If the individual property owners, or an aggregation of individuals, may test, illustrate, or demonstrate with their own means or materials or possessions ideals or methods to which they accord a common adherence or approval, and in the processes invade or violate no other's right, and offend no prohibitory or regu-

latory law, it is not conceivable that a corporation can-
not be validly created and authorized under like cir-
cumstances, and operated with like innocence of offense
against laws or rights, to test, illustrate, or demon-
strate like ideals or methods.    Broadly considered, a
corporation is, in nature, but a convenience, a facility,
only possessing the powers conferred by the creator up-
on it and subject to the valid, appropriate measures
of control, surveillance, and regulation governments
may impose to the anticipated or accepted advantage
and welfare of the governments, of the corporation and
its members, of the public, and of those otherwise af-
fected by or concerned in the institution's activities.

The enactment of 1903 permits the creation of a cor-
poration designed to allow the incorporators and the
corporation's controllees to illustrate and demonstrate,
with its own property, means, and efforts, coupled with
the presumed observance of contractual obligations as-
sumed by others, single tax or other economic princi-
ples without impairing, embarrassing, or violating any
features or function in the organic law.    That is the
enabling purpose of the enactment; and the powers
conferred on the incorporation when perfected are those
contributive to the effectuation of that purpose—a pur-
pose predicated of the motives of the class who are
described in section 1 of the enactment; a purpose de-
signed to permit them to combine their resources, ener-
gies, and particular faith into a legal unit to test, il-
lustrate, or demonstrate the principles in which they
believe, but in the effectuation or demonstration of
which objective the government as such takes no part
and is in no wise concerned.

(6,7)    Now, the courts are only authorized to pro-
nounce an enactment violative of the Constitution when

20—193

it is obnoxious to the express terms of the Constitution or to necessary implication afforded by or flowing from such express provision of the Constitution, and then only after the enactment is found not to be fairly susceptible of a construction that would avoid such offense to the organic law.—*Ex parte Owens,* 148 Ala. 402, 410, 42 South. 676, 8 L. R. A. (N. S.) 888, 121 Am. St. Rep. 67; Cooley on Const. Lim. (7th Ed.) pp. 239-242; *State ev rel. v. Greene, supra; Fox v. McDonald,* 101 Ala. 51, 76, 13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98. It need hardly be added to this statement of established doctrine that enactments cannot be pronounced void because violative of the judicially conceived "spirit" of the Constitution, or "contrary to first principles of common or natural right," or opposed to "public policy."—*Dorman v. State,* 34 Ala. 216, 235, 236, and authorities supra; and see, also, 8 Cyc. pp. 778, 779; *Julien v. Model, etc., Co.,* 116 Wis. 79, 92 N. W. 565, 61 L. R. A. 668; *Probasco v. Raine,* 50 Ohio St. 378, 34 N. E. 536; *Kenneweg v. Com'rs,* 102 Md. 119, 62 Atl. 251. The enactment under review cannot, as indicated, be condemned on the ground of its opposition to "public policy."

(8-14) If the principles applied by the corporation in the lawful management or disposition of its property serves to satisfy the incorporators, or any others taking note of its illustrative operations or plans, that the principles of "single tax" are so good as to be worthy of assimilation and application in our schemes of government, and thereby create a basis for a propaganda by those thus convinced that would invite even fundamental changes in our governments and in the enjoyment of the ownership and tenure of land, no violation of our organic laws would be thereby committed.

To affirm that legislative permission to organize a corporation to test, illustrate, or demonstrate, with its own means and efforts and without violation of any prohibitory law or the personal or property rights of others, is offensive to the organisms established by the Constitutions, would be, in effect, but the denial, the repression, of all means and aspirations for improvement which advancing civilization and accumulated experience may discover as desirable to be appropriated and adopted through the orderly processes by which the governed may effect changes in their government.  To illustrate:  We doubt not a corporation might have been lawfully created to promote, with its own efforts and means, the common judgment of its members that the federal Constitution should be amended, so as to allow the imposition of an "income tax," or that Senators might be chosen by the electorate of the states, instead of by the Legislature of the states, as the Constitution then required.  We doubt not a corporation, might be lawfully created to promote, with its own efforts and means, the governmental acceptance of the common judgment of its members that a different method of government for the state should be substituted for that now established by the Constitution of Alabama.

If it is desirable or necessary, after what has been said, to undertake a mention of an idea or principle common to a system of single tax and to the "business" this corporation may lawfully conduct as a "benevolent landlord" of and for the complainant (appellee) and others of its tenants, this may be noted:  That the corporation, though owning the land, holds it as if the land was the common property of the lessees, exacts annual individual rentals upon the basis and as before

described, pays from the common fund the taxes laid by existing tax laws upon the lands and the property of the tenants (with the exception indicated above herein), and devotes the remainder to the common benefit of the lessees. Aside from the fact that existing tax systems are not the supreme, commanding source of the processes and results thus generally stated, there is, as we understand it, a marked kinship between the single tax system as proposed by Henry George and what this corporation may do and appears to be doing under the warrant of its incorporation.

Our opinion is that the act of 1903, under which the appellant was regularly incorporated, is not violative of the Constitution, federal or state.· It is not violative of sections 8 and 9 of article 1 of the Constitution of the United States, nor of the sixteenth amendment thereof; it is not violative of the following sections of the Constitution of the state of Alabama: 211, 212, 229, 232, and 259. The appellant is, hence, a corporation de jure.

Distinguishing, if it can be done, the stated purpose underlying the act authorizing incorporations like that of the appellant from the exercise of the entirely lawful powers conferred by section 5 of the act allowing such incorporations, it cannot be affirmed or denied that the stated purpose is impossible of approximate attainment, because, whether the demonstration or illustration with or by the exercise of the lawful powers, conferred on the corporation, in a manner or through methods the incorporators conceive to consist with the economic principles approved by the corporation and those contractually concerned in or with its lawful operations, has been, is, or will be successful, is purely a matter of deduction from a premise of fact (assumed,

not shown, it may be), that the soundness, wisdom, and practicability of the principles desired to be vindicated by actual test, within the bounds of every law, has been, is, or will be demonstrated or illustrated. One might conclude that the lawful exercise of the powers conferred, however ordered, arranged, or applied they may be, would conduce to no possible demonstration or illustration of the principles adherence to which inspired the exercise of the powers; and another might conclude, with equal certainty of immunity from having his conclusion refuted, that the lawful use of the lawful powers conferred had already made a real object lesson confirmatory of the soundness and the practicability of the theories predicated of the principles sought to be illustrated by the corporate use of the powers conferred. There is no standard—nor can there be—by which the justification or correctness of these opposite deductions may be determined. Such deductions lie entirely in the realm of irrevisable individual conception and personal judgment, colored, if not controlled, by the individual's predilection for or against the economic principles which the order, arrangement, or processes observed are conceived to test, illustrate, or demonstrate.

No court can safely undertake to consider and determine the soundness, correctness, or wisdom of the mental processes or deductions of individuals who, from a lawful management of properties they control, conclude that particular economic theories or principles are confirmed in actual test or are vindicated by real illustration. Being so restrained by the very nature of the thing, it is evident that the court cannot register a judgment that the purpose in authorizing the incorporation has or will fail, any more than it can register

a judgment that the purpose in authorizing the incorporation has or will succeed.

(15) It appears from the averments of the bill that the corporation is in the actual lawful exercise of powers conferred on it by section 5 of the act, and that at least some of the phases of its authorized activity are. profitable. It is not insolvent. It appears to owe no debts. Under the circumstances shown in the bill, the corporation cannot be dissolved at the suit of a minority stockholder on the ground of its already accomplished or foreshadowed failure, financial or otherwise.— *Decatur Land Co. v. Robinson,* 184 Ala. 322, 63 South. 522; *Ala. Central Ry. Co. v. Stokes,* 157 Ala. 205, 47 South. 336. The enactment does not require the concurrent exercise of all the powers conferred, nor that even one shall be profitably exercised. If some of its activities only promise serious losses, it is to be presumed, until the contrary is circumstantially disclosed by averments in the pleading, that the corporation's governing authority will not carelessly, needlessly, suffer its extinction by the complete absorption of its assets in unprofitable operations or enterprises.

(16-18) Invoking action on phases of complainant's asserted rights to relief other than upon the theories denied efficacy by the conclusions registered hereinabove, the prayer of the bill contains this: "In the event that it be found and adjudged that your orator is not entitled to the relief above prayed, then and in such event your orator prays that the said Fairhope Single Tax Corporation, the individual members thereof, its executive council, and the members thereof, and all of its officers and agents, be enjoined and restrained from fixing the rent under your orator's lease on any basis other than the actual value of the lands exclusive

[Fairhope Single Tax Corporation v. Melville.]

of improvements, and from devoting any of the rents to purposes other than to purposes mutually beneficial to all of the lessees, and from paying from said rents, any taxes upon the said company's unrented and unproductive land. Your orator further prays that the said injunction also be made effective in behalf of all other tenants of the said company.'

Article XIV of the constitution of the corporation, hereinabove set forth, expressly contemplates the payment of all taxes on the property of the corporation out of the general fund. This provision of the corporation's constitution, to the rule and authority of which the complainant has been and is committed as a member of the corporation, affirmatively justifies the payment of the taxes on unleased and unimproved lands owned by the corporation out of the common fund. Until this feature of the corporation's constitution, a feature that does not appear to conflict with any provision of the charter afforded by the act under which it was organized, is eliminated by appropriate orderly action of the members of the organization, the complainant should not be heard to complain against its observance.

If the other two subjects of complaint set forth in the prayer quoted are regarded as corporate wrongs, and such appears to be the pleader's intention, the facts upon which the complainant's conclusions are predicated should be more fully averred. However, if it be assumed (for the occasion only) that those two subjects of complaint, when fully disclosed by adequate allegations of fact, are wrongs of which this complainant may complain, their remedy may be affected by the corporate authorities upon their being directly advised thereof and their correction of these wrongs specifical-

ly invoked. The allegations of the bill are not sufficient in respect of the particular averments showing an effort to have the wrongs (if so) righted by the corporate authorities or to show the futility of appeal to those authorities.

The decree overruling the demurrer is laid in error. It is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.