To the Honorable Speaker and Members of the House of Representatives
State Capitol
Montgomery, Alabama 36130
Dear Sirs and Mesdames:
The Chief Justice has received a letter from Honorable John W. Pemberton, Clerk, House of Representatives dated July 12, 1979, forwarding a copy of House Resolution No. 282 in which the House has requested our opinions as to the constitutionality of Senate Bill No. 214.
House Resolution No. 282 requests that we answer the following questions under the authority of Code 1975, § 12-2-10:
“1. Does Senate Bill 214, in its present form, violate Amendment 14 to the United States Constitution, by seeking to take property without the due process of law?
“2. Does Senate Bill 214, in its present form, violate Article XII, Section 238 of the Constitution of Alabama of 1901, by revoking the charter of a corporation in such a manner that injustice shall be done to the stockholders?
“3. Does Senate Bill 214, in its present form, violate Article I, Section 22 of the Constitution of Alabama of 1901 by impairing contracts?”
Pursuant to your request, we answer your inquiries as follows:
Our answer to your question 1) is “yes.”
Our answer to your question 2) is “yes.”
Our answer to your question 3) is “yes.”
The portions of Senate Bill No. 214 pertinent to this inquiry read as follows:
SYNOPSIS: This bill revokes the charter of any single tax corporation organized under Section 10-4-190 through Section 10-4-193, Code of Alabama 1975, and provides for the distribution of assets.
A BILL TO BE ENTITLED AN ACT
To provide that the corporate charter of any corporation organized under Section *295 10-4-190 through Section 10-4-193 of the Code of Alabama 1975 for the demonstration of the single tax principal shall be revoked, and to provide for the distribution of assets.
■ BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
Section 1. The corporate charter of any corporation organized under Section 10-4-190 through Section 10-4-193 of the Code of Alabama 1975 for the purpose of demonstrating the single tax principal shall be and the same is hereby revoked.
Section 2. Upon the dissolution of any such corporation by the legislature or otherwise, the assets of such corporation shall be applied and distributed as follows:
(1) All liabilities and obligations of the corporation shall be paid, satisfied and discharged, or adequate provision shall be made therefor;
(2) One hundred dollars ($100.00) shall be returned to each member of the corporation for reimbursement of their membership fee;
(3) Assets received and held by the corporation subject to trust or other limitations permitting their use only for mutual benefit, charitable, religious, eleemosynary, benevolent, educational, or similar purposes, but not held subject to contract or lease, shall only be distributed to another nonprofit corporation similarly situated, consisting of the members and lessees of the prior corporation. On the absence of such transfer, such assets shall escheat to the State;
(4) Assets received and held by the corporation subject to lease rights or other contract rights shall only be distributed to another non-profit corporation similarly situated consisting of the members and lessees of the prior corporation. In the absence of such transfer, such assets or property held subject to lease or contract, shall be offered for sale to the lessee at a fair market value or independently appraised value. If such offer is refused, the property may be sold at public auction and the proceeds applied to property held subject to a trust for the mutual benefit of the members of another non-profit corporation similarly situated consisting of the members and lessees of the prior corporation, and any purchaser at such public auction shall hold such property subject to trust and lease limitations and shall automatically become a member of any non-profit corporation similarly situated to which assets are distributed;
(5)Other assets, if any, shall be distributed to another non-profit corporation similarly situated consisting of the members and lessees of the prior corporation. In the event such transfer is not made, such assets will escheat to the State.
Section 3. The provisions of this act are severable. If any part of the act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
A brief background of Code 1975, §§ 10-4-190 through 10-4-193, was previously set out in Opinion of the Justices, No. 222, 333 So.2d 125, 126 (1976). There it was said:
“Title 10, section 168, Code of Alabama 1940, (as amended by Act No. 445, Acts of Legislature 1966 Special Session, p. 602, approved September 12, 1966) [now Code 1975, § 10 — 4-90 (1975)] provides, inter alia, that ten or more persons may associate themselves together and form a single tax corporation, that the charter shall be perpetual, ‘subject to revocation at any time by the legislature,’ that the corporation may elect its own officers and adopt such constitution and bylaws as it may see fit so long as they are not in conflict with the Constitution of laws of this state, that such corporation may buy, sell, lease and mortgage real estate, build wharves, boats, waterworks, electric power works, schools, libraries, parks, etc., ‘for the mutual benefit of its members.’ * * * We judicially know that there is one single tax corporation in Alabama. See Fairhope Single Tax Corporation v. Melville, 193 Ala. 289, 69 So. 466 (1915). There, the history of Title 10, section 168, and its conception in Henry George’s Progress and Poverty (1879) is discussed.”
You first ask whether Senate Bill 214, in its present form, violates Amendment 14 to the United States Constitution, by seeking *296 to take property without the due process of law. The first section of Amendment 14 reads:
. “All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection, of the laws.”
Article XII Section 238 of the Alabama Constitution of 1901, also of concern here, reads:
“The legislature shall have the power to alter, amend, or revoke any charter of incorporation now existing and revocable at the ratification of this Constitution, or any that may be hereafter created, whenever, in its opinion, such charter may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done to the stockholders.”
In considering Code 1975, §§ 10 — 4-190 through 10-4-193 (1975) we deem “members” to be the equivalent of “stockholders” of a corporation and thus to enjoy the same equity ownership and property rights that shareholders enjoy in a commercial corporation. In Opinion of the Justices, No. 222, supra, it was said:
“In the context of Title 10, section 168, [now Code 1975, § 10-4-190 (1975)] we equate ‘members’ with ‘stockholders,’ and we assume, without deciding, that the rights which members exercise and enjoy in the management of the corporation are ‘property rights’ within the meaning of the fourteenth amendment. See Walsh v. State, 199 Ala. 123, 74 So. 45, 2 A.L.R. 551 (1917); Ayers v. Burley Tobacco Growers Cooperative Ass’n, 344 S.W.2d 836 (Ky.1961); Faunce v. Boost Co., 15 N.J.Super. 534, 83 A.2d 649 (1951); Lord v. Equitable Life Assur. Society, 194 N.Y. 212, 87 N.E. 443 (1909); Fein v. Lanston Monotype Machine Co., 196 Va. 753, 85 S.E.2d 353 (1955).”
The opinion also quoted from Fein v. Lanston Monotype Machine Co., 196 Va. 753, 85 S.E.2d 353 (1955), which said:
“ ‘A stockholder may not be deprived of the property value of his stock or the rights inherent in its ownership, except by his consent or lawful process.’ ”
Thus clearly, the members have property rights in the assets of this corporation. Revocation of its charter would unconstitutionally deprive members of those property rights if such revocation did not comply with the demands of due process as guaranteed by Amendment 14.
By Article XII, Section 238, the legislature may revoke a charter of incorporation “ * * * whenever, in its opinion, such charter may be injurious to the citizens of this state * * *In Senate Bill No. 214 there is no allegation or showing that the corporation was exercising powers under its charter so as to injure, or that the charter itself was injurious to, the citizens of this state. Absent such showing the legislature has no authority to revoke such charter. Should it do so the result would be a deprivation of property rights of the members without due process of law.
Your second question, whether Senate Bill No. 214 violates Article XII Section 238 of the Alabama Constitution of 1901, has essentially been answered above. Here again, without any showing that the charter was “injurious to the citizens of this state,” the legislature is without authority to revoke the charter. The halting of corporate activities without a showing of injury to the citizens would act as an injustice to the members who had ownership and property interests therein and would be in violation of Section 238.
Your final question is whether Senate Bill No. 214 violates Article I, Section 22 of the Constitution of Alabama of 1901 by impairing contracts. It is clear under Alabama law that charters of corporations are deemed to be contracts between the legislature and the corporation. Opinion of the Justices, No. 222, supra. State of Ala *297 bama v. Alabama Bible Society, 134 Ala. 632, 32 So. 1011 (1902). Thus, it has long been held the legislature cannot alter, amend or revoke charters which it granted without reservation of the specific right to do so; and in this case without complying with Section 238, Const., 1901. Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629 (1819).
Because Section 238 was in effect at the time the charter in question was granted, this section must be construed as part and parcel of the charter contract. In construing Section 238; Opinion of the Justices, No. 222, supra, stated:
“ * * * As a result of this provision, the legislature’s right to alter, amend or revoke charters it has granted becomes part of the charter/contract itself. * * .”
Section 238 provides for the legislature to have the power to revoke some of the charters if grants, however, here it has previously been shown the provisions of Section 238 have not been complied with. There was no showing of injury to the citizens of Alabama, therefore Section 238 does not operate to permit the legislature to revoke the charter of Fairhope Single Tax Corporation.
Having answered the specific questions posed by your resolution, we would caution the answers are advisory only, and although favored with briefs amici, there have been no adversary proceedings at which facts were developed and issues of law defined under those facts.
Respectfully submitted,
C. C. Torbert, Jr., Chief Justice
James N. Bloodworth
James H. Faulkner
Reneau P. Almon
Janie L. Shores
Eric Embry
Samuel A. Beatty Associate Justices
To permit lessees to share as members of the successor nonprofit corporation in the assets of the prior corporation, as the bill appears to contemplate, would in our judgment grant lessees who are not members of the prior corporation “the same rights, privileges, and benefits as are accorded members and would deprive the members of their property rights” without due process of law. As we have heretofore written, “The legislature cannot by legislative edict transfer property from one person to another.” Opinion of the Justices, 333 So.2d 125 (Ala.1976).
James N. Bloodworth Reneau P. Almon