527 So.2d 1232 (1987)
FAIRHOPE SINGLE TAX CORPORATION, et al.
v.
Rudolph John REZNER, Sr., et al.
Rudolph John REZNER, Sr., et al.
v.
FAIRHOPE SINGLE TAX CORPORATION, et al.
85-482, 85-613.
Supreme Court of Alabama.
September 11, 1987.
Rehearing Denied March 25 and June 24, 1988.
*1234 M. Roland Nachman, Jr., and Norborne C. Stone, Jr., of Stone, Granade, Crosby & Blackburn, Bay Minette, for appellants/cross-appellee.
J. Don Foster, of Foster, Bolton & Dyson, Foley, and Champ Lyons, Jr., of Coale, Helmsing, Lyons & Sims, Mobile, for appellees/cross-appellant.
Lawrence B. Voit, of Silver & Voit, Mobile, for amicus curiae Gerald Pond in support of appellee/cross-appellant Rudolph Rezner.
TORBERT, Chief Justice.
These appeals arise from a class action suit filed by several of the lessees of the Fairhope Single Tax Corporation ("FSTC") against FSTC and several of its officer-members. The plaintiff lessees sought a wide range of relief, including an injunction to prevent the dissolution of FSTC, an accounting, a revision of the lease forms and of FSTC's constitution, a declaration of mineral rights, damages (both compensatory and punitive), and attorney fees. The trial court made extensive findings of fact, which are not challenged on appeal, and entered a judgment granting most of the relief sought by plaintiffs. Defendants appealed; plaintiffs cross-appealed in order to get certain details of the trial court's order changed.
FSTC was organized in 1904 under the authority of what is now Code 1975, §§ 10-4-190 through -194, and is sui generis. FSTC originated as a single tax colony founded in 1894 in order to demonstrate the values of Henry George's single tax theory as expressed in his book Progress and Poverty. FSTC now owns approximately 4300 acres in Baldwin County and has about 1300 lessees. There are only 140 members of FSTC, and only about 60 members actually hold FSTC leaseholds. FSTC's assets total over $20 million.
There was much oral and written evidence in this case, and the trial court made extensive findings of fact and conclusions of law in its 19-page judgment. Basically, the executive council of FSTC ordered large increases in rent over several years and increased rent for various "country" lots at a higher rate than for "city" lots. FSTC members used FSTC money from the "Rent Fund" (which FSTC admits is a trust) to develop a subdivision; FSTC also transferred interest from the Rent Fund to the "Land Fund" (used to buy land). The members attempted to dissolve FSTC in 1979 in order to reorganize it as a "for profit" corporation with each member having one share, and $2600.00 was paid out of the Rent Fund to an attorney, who was a member, for his work on the attempted dissolution. Income taxes on the Land Fund and on a "Mineral Fund" were paid out of the Rent Fund. The trial court determined that all of these actions (along with others) amounted to a breach of a fiduciary duty by FSTC and the individual defendants.
FSTC revised the lease it had used since 1932, and the trial court held that the adoption of the revised lease was a breach of the contract FSTC had with each lessee under the standard lease to maintain a trust with the rent money received from all lessees for the equal benefit of all lessees.
The trial court ordered extensive changes in the operation of FSTC. These *1235 include: giving all lessees the opportunity to become members (with certain conditions), reinstating use of the standard lease, reevaluating the rent assessment system, ending restrictions on transfer of improvements, recognizing that clearing of land is an improvement, returning misused moneys to the Rent Fund, making all minerals for the common benefit of all members and lessees, and restricting cash surplus to an amount equal to twice FSTC's annual expenses. The court also held § 10-4-194 unconstitutional. It also enjoined any attempt to dissolve FSTC. Further, the defendants were ordered to pay $141,600.00 in compensatory damages, $110,000.00 in punitive damages, and $179,686.77 in attorney fees.
Appellants raise the following issues:
(1) Whether the trial court violated members' rights by establishing substantive criteria for membership.
(2) Whether the trial court erroneously injected itself into FSTC management (especially in the areas of rents and leases).
(3) Whether the trial court ignored the rule that a stockholder must first comply with the corporation's internal procedure for grievance resolution before filing suit.
(4) Whether the trial court erroneously intruded into the business judgment of FSTC management (especially in the areas of improvement classifications and mineral rights).
(5) Whether the trial court erroneously awarded plaintiffs compensatory and punitive damages.
(6) Whether the trial court erroneously awarded plaintiffs attorney fees.
On cross-appeal, appellees raise these issues:
(1) Whether the trial court erred in requiring prospective members to take the "Henry George course" on single tax theory and in allowing applicants to be rejected for "good cause."
(2) Whether the trial court erred in holding § 10-4-194 unconstitutional.
(3) If defendants did not waive the issue of pursuit of internal corporate remedies by not raising it at trial, then did the trial court err in not admitting a letter showing plaintiffs' attempt to pursue internal remedies?
Most of these issues can be resolved by answering the following question: What is the essential nature and character of FSTC? Defendants argue that FSTC should be treated as a commercial corporation and, thus, that the trial court impermissibly meddled in the internal management of FSTC. Plaintiffs argue that FSTC should be treated as a trustee administering a charitable trust for the benefit of members and lessees alike. We stress that FSTC is sui generis; it is not exactly like any other entity known to our law, and thus, our holding in this case is a narrow one. We hold that FSTC is more in the nature of a commercial corporation than in the nature of a trustee of a charitable trust.
Section 10-4-190 provides that "Ten or more persons desiring to associate themselves together not for pecuniary profit in the sense of paying interest or dividends on stock, but for mutual benefit through the application of cooperation, single-tax or other economic principles, may become a body corporate...." In all of the opinions that this Court has issued that deal with FSTC, we have analogized FSTC members to stockholders in a corporation. "[T]he corporation [FSTC] cannot be dissolved at the suit of a minority stockholder on the ground of its already accomplished or foreshadowed failure, financial or otherwise." Fairhope Single Tax Corp. v. Melville, 193 Ala. 289, 310, 69 So. 466, 473 (1915). "In the context of Title 10, section 168 [now Code 1975, § 10-4-190], we equate `members' with `stockholders.'" Opinion of the Justices No. 222, 333 So.2d 125, 126 (Ala. 1976). "In considering Code 1975, §§ 10-4-190 through 10-4-193 ... we deem `members' to be the equivalent of `stockholders' of a corporation and thus to enjoy the same equity ownership and property rights that shareholders enjoy in a commercial corporation." Opinion of the Justices No. 262, 373 So.2d 293, 296 (Ala.1979). See *1236 also, Rezner v. Fairhope Single Tax Corp., 292 Ala. 456, 460, 296 So.2d 166, 170 (1974) (likens members to stockholders who must apply to a corporation's directors for redress before they can sue the corporation).
"[A]s a general rule courts of equity will not interfere with the internal business management of corporate assets by the board of directors. But in case of fraud or maladministration, destructive or injurious to the corporation, this rule does not apply." Cherry Investment Corp. v. Folsom, 273 Ala. 575, 577, 143 So.2d 181, 183 (1962). The business judgment rule applies to non-profit corporations as well. W. Fletcher, Cyclopedia of Corporations, § 2104, at 425 (1976).
Since FSTC is more like a commercial corporation than a trustee, the trial court erred in using its equitable powers to make changes in the internal management of FSTC and to enjoin any attempt by management to dissolve the corporation.
The trial court also erred in making changes in FSTC's membership policy. Section 10-4-192 provides that any corporation incorporated under § 10-4-190 "may admit such other persons to participate in its benefits as it may see fit and upon such conditions as it may impose."[1] (Emphasis added.) Article III of FSTC's 1932 constitution states, "Any person over the age of eighteen years whose application shall be approved by the Executive Council and who shall contribute to the Corporation one hundred dollars, shall be a member of the Corporation....." (Emphasis added.) "`The grant or refusal of membership in a voluntary association is a matter within the complete control of the organization, which has the power to enact laws governing the admission of members, and to place restrictions on the right of admission.'" Chapman v. American Legion, 244 Ala. 553, 556, 14 So.2d 225, 228 (1943) (quoting 7 C.J.S. Associations § 23 p. 59 (1980)). Since FSTC is not to be treated as a trustee, then its membership policy is within its discretion.
The trial court erred in making changes in FSTC's management on the basis of the contracts between FSTC and its lessees. "When parties enter a written contract, the writing is the sole expositor of the intention of the parties and the transaction." Whitehead v. Johnston, 467 So.2d 240, 243 (Ala.1985). The plaintiffs complain that they had contracted with FSTC to have FSTC apply the principles of Henry George. Nowhere in the standard lease and lease application (which is incorporated into the lease) or in the revised lease and lease application is the Henry George theory mentioned. The standard lease states:
"The said lessee ... shall pay to the said Fairhope Single Tax Corporation ... the annual rental value of said land, exclusive of the improvements thereon, to be determined by the said Corporation through its Executive Council or Board of Directors, under its avowed principle of so fixing the rentals of its lands as to equalize the varying advantage of location and natural qualities of different tracts and convert into the treasury of the Corporation for the common benefit of its lessees, all values attaching to such lands, exclusive of improvements thereon."
The above land rental principle is indeed very similar to the basic principle of Henry George's theory: "We must make land common property." H. George, Progress and Poverty 295 (1879). However, the standard lease does not say that Henry George's theory will be applied. The standard lease application incorporates FSTC's constitution, but the constitution never mentions the Henry George theory.
All of the plaintiffs' expert testimony about how the Henry George theory should work and how FSTC was not applying it is irrelevant to the contract claim, for the plaintiffs never contracted to have the Henry George theory applied.
As to the plaintiffs' claim that FSTC has discriminated in its rent increases, this *1237 Court has stated what actions are necessary in order to state a cause of action with respect to the rents charged by FSTC. In Rezner v. Fairhope Single Tax Corp., 292 Ala. 456, 459, 296 So.2d 166, 169 (1974), we relied upon Fairhope Single Tax Corp. v. Melville, 193 Ala. 289, 69 So. 466 (1915), and stated that allegations as to these wrongs [the rents] did not state a cause of action absent allegations that the internal remedies of the corporation have been invoked or that to do so would be futile. Plaintiffs made no allegation that they had invoked FSTC's internal rent review procedure or that to do so would be futile. Plaintiffs did attempt to introduce a letter written to the members approximately two years after this suit was filed; plaintiff claimed this letter was an internal demand for relief. This letter was to the members in general and made no attempt to invoke the internal remedies procedure of FSTC. Defendants raised as a defense the failure to state a claim upon which relief can be granted and they showed at trial the plaintiffs' failure to pursue the internal remedies of the corporation. Therefore, plaintiffs have failed to state a cause of action as to the setting of rents.
The trial court held that § 10-4-194 is unconstitutional. A challenge to the constitutionality of an Alabama statute falls under the Alabama Declaratory Judgment Act, § 6-6-220 et seq., and the Attorney General must "be served with a copy of the proceeding and be entitled to be heard." Section 6-6-227. The Attorney General was not served with notice of the defendants' challenge to § 10-4-194. The defendants should have complied with § 6-6-227. Barger v. Barger, 410 So.2d 17 (Ala.1982). Therefore, the trial court had no jurisdiction to resolve the constitutional claim and its decree concerning § 10-4-194 is void. Guy v. Southwest Alabama Council on Alcoholism, 475 So.2d 1190 (Ala.Civ.App. 1985).
The trial court also assessed compensatory damages against the defendants, punitive damages against the individual defendants, and attorney fees. These damages awards were for the misuse of monies from the Rent Fund. The defendants admit that the Rent Fund is a trust fund created from the standard lease that states that all rents "shall be administered as a trust fund for the equal benefit of those leasing its lands." A trustee owes undivided loyalty to the trust. Birmingham Trust Nat. Bank v. Henley, 371 So.2d 883, 895 (Ala.1979), cert. denied, 445 U.S. 915, 100 S.Ct. 1273, 63 L.Ed.2d 598 (1980). The misuse of monies from the Rent Fund was a breach of duty on the part of the defendants. Where the course of dealing of the trustee is such that it causes a loss, a trustee will be liable. First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415, 428 (Ala.1982). The Rent Fund was to be for the equal benefit of all lessees, and the lessees were denied benefit of the funds wrongfully taken from that fund. Therefore, the trial court correctly ordered that compensatory damages be paid into the Rent Fund to reimburse it.
The trial court also assessed punitive damages against the individual defendants. Punitive damages may be awarded where malice or fraud is involved. C. Bogert, The Law of Trusts and Trustees, § 862, at 41 (rev. 2d ed. 1982). The trial court did not find that the defendants' breaches of duty concerning the Rent Fund involved malice or fraud, and the record does not indicate such conduct. The trial court erred in awarding punitive damages in this case.
The trial court correctly awarded attorney fees to the plaintiffs. The plaintiffs' suit benefited the Rent Fund trust. "In Alabama, when the contentions of a party in litigation are in the interest of and for the benefit of the entire trust estate, the courts will award costs and attorney fees from the trust estate to the party benefiting the trust estate." Farlow v. Adams, 474 So.2d 53, 59 (Ala.1985).
The trial court's award of compensatory damages is affirmed. While an award of attorney fees is appropriate in this case, we remand this aspect of the judgment for the trial court's consideration of the amount of the award in light of our reversal of other parts of the judgment in this case. The *1238 trial court's award of punitive damages is reversed. The trial court's holding that § 10-4-194 is unconstitutional is reversed. The trial court's order making changes in FSTC's management, rent policies, and membership policies is reversed. This cause is remanded to the trial court for it to dissolve its injunction and to enter an order not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
MADDOX, JONES, BEATTY, HOUSTON and STEAGALL, JJ., concur.
ALMON, J., not sitting.

ON APPLICATION FOR REHEARING
TORBERT, Chief Justice.
In their motion for rehearing, the appellees/lessees raise several issues considered in our original opinion and some not directly addressed in that opinion although argued in their brief.
Concerning discriminatory rent increases, the lessees now argue for the first time that they cannot be held to the requirement of pursuing internal remedies because they are not members of FSTC, and, therefore, that they properly stated a cause of action by alleging that FSTC had discriminated against them in violation of their lease agreements, without stating that they had pursued internal remedies or that to do so would be futile. We agree.
As noted above, this Court has equated members of FSTC with stockholders of a commercial corporation. Unlike members, the non-member lessees have no equity ownership or property rights in FSTC. As against FSTC, their rights are purely contractual, and it follows that the non-member lessees are under no duty to make an internal demand on FSTC before filing suit to enforce contract rights under their lease agreements.[1]
The next question is what effect this conclusion will or should have on the trial court's order requiring FSTC to implement a new rent assessment system. As an initial matter, the specific contractual rights of the non-member lessees regarding annual rents should be enumerated and considered. These rights are derived from the standard "Application for Land," the lease agreement, and the FSTC constitution and can be summarized as follows:
The annual rent is to be the "annual rental value," exclusive of the lessee's improvements, as determined by the executive council "under the avowed principles of so fixing the rentals of its lands as to equalize the varying advantage of location and natural qualities of different tracts." The term "rental value," as applied to realty, means the value of the use of the land. White Roofing Co. v. Wheeler, 39 Ala.App. 662, 666, 106 So.2d 658, 662 (1957), cert. denied, 268 Ala. 695, 106 So.2d 665 (Ala. 1958). Also, with the exception of the right to participate in the governance of FSTC, the non-member lessees have the right to be treated with strict equality with members in "the distribution of benefits." Based on the essential purpose of FSTC with respect to land, we construe this right to include the right to be treated equally with members in the determination of annual rents.
In summary, although there is no contractual "fairness" limitation in the determination of the lessees' annual rents,[2] FSTC is obviously bound by three contract terms: the annual rent 1) must approximate the annual value of the use of the *1239 land, exclusive of the lessee's improvements, 2) it must be based on the goal of equalizing rents on different tracts of land, and 3) it should be the same as that charged members on similar tracts of land.
In ordering FSTC to implement a new rent assessment system, the trial court proceeded under the theory that FSTC is a charitable corporation and that all lessees, non-members as well as members, are beneficiaries. The relief was ordered based on the finding of discrimination against non-member lessees in the determination of annual rents. Although this finding of fact is not contested, we find two reasons for concluding that the trial court abused its discretion in ordering the aforementioned relief.
First, FSTC is more in the nature of a commercial corporation than in the nature of a trustee of a charitable corporation. Second, as against FSTC, the rights of the non-member lessees are purely contractual. Hence, the non-member lessees' only available remedies are either money damages or specific performance. In their original brief, appellees argued that "[T]he trial court's action in regard to the rental policy of FSTC is justifiable under the ... alternative grounds of specific performance of a contractual right." Appellees further argue, because their contractual rights relate to real property and specific performance of a land contract is available within the discretion of the trial court, that the "allowance of [the] requested modification in FSTC [rent] policy was appropriate." We disagree.
Any right the non-member lessees may have to specific enforcement of their contract rights with regard to the determination of annual rentals would not go so far as ordering FSTC to make changes in its internal management. The trial court erred in ordering FSTC to appoint a "Rent Study Commission" and to implement a new rent assessment system. Moreover, with regard to alleged past discrimination, the only proper remedy would be money damages. As to the proper remedy to insure that FSTC will comply with its contractual obligation to assess lessees a fair annual rent, as previously outlined, the trial court can do no more than enforce the contract as written.
The trial court also ruled that "[T]he policy of FSTC whereby it restricts the sale of improvements by its lessees to a purchase price approved by FSTC is hereby declared void." Appellees argue that the order prohibiting such a restriction was justified and required by the FSTC Constitution and that they are unsure whether our original opinion reversed this aspect of the trial court's order.
Article 8, § 3, of the FSTC constitution provides that "[L]and leases shall convey full and absolute right ... to the ownership and disposition of all improvements made... thereon." The "Standard Lease Application" provides:
"I agree that ... [I will not] charge an excessive price out of any fair relation to the value of my improvements for transfer of an improved leasehold; and, recognizing that in the transfer of an improved leasehold there are necessarily two factors of value, one the improvements which are my property and the other the land upon which the same stand, which is not my property but the property of the Corporation, I agree to advise the Corporation, before a transfer of an improved leasehold shall be effective, of the exact consideration for the transaction and that the Corporation, if it believes the consideration to include in fact a profit for the transfer of the land which belongs to it, shall be entitled to examine me and the prospective purchaser as to the elements of value in the consideration and if satisfied that the consideration is in part for the possession of the land above the value of the improvements may refuse approval of the transfer; in which event I shall be entitled to call for an appraisal of the value of my improvements by three disinterested persons, myself and the Corporation each choosing one out of three persons named by the other and the third being selected by the two; and the Corporation shall be required to approve the transfer at such consideration as the arbitrators *1240 shall find to be the real value of my property, if accepted by me; it being understood and agreed that every factor of value attaching to the premises proposed to be transferred due to my efforts or expenditures, or in any way to my initiative which is transferable ... shall be held to inure to me as fully as tangible structures upon the land; the purpose being to protect the user and improver of land in the full ownership and right of transference of everything due to him, but to preserve to the Corporation all value due to demand for the land exclusive of improvements."
It is obvious from the foregoing provisions that FSTC has no right to dictate the price at which lessees are to sell the improvements on their leaseholds. FSTC's only interest and right is to see that the price received by a lessee on the transfer of his leasehold does not include consideration for the transfer of the land itself. In this regard, if FSTC believes that a lessee is in fact receiving consideration for the transfer of the land, it is obliged to proceed as the lease application provides. The trial court was, therefore, correct in ordering FSTC to cease its policy of requiring lessees to first get approval of the sale price of their improvements before transferring their leaseholds.
Under FSTC policy, clearing land is not considered an improvement for the purposes of subleasing it. In its conclusions of law, the trial court held that this policy, which prohibits a lessee from subletting such cleared land for any rental in excess of what FSTC charges the lessee, "is another violation of the lessee's right to the security of his improvements." The trial court ordered that "[T]he clearing of unimproved land by a lessee shall be considered an improvement by the lessee for all purposes."
The "Standard Lease Application" provides:
"[E]very factor of value attaching to the premises proposed to be transferred due to my efforts or expenditures, or in any way to my initiative which is transferable, such as the good will of a going business, the exercise of taste in planning improvements or the making of grounds attractive, or the element of time and care in growing an orchard or shade trees, or making land more productive by improved methods of farming, or increment of value due to increasing cost of building, shall be held to inure to me as fully as tangible structures upon the land; the purpose being to protect the user and improver of land in the full ownership and right of transference of everything due to him, but to preserve to the Corporation all value due to demand for the land exclusive of improvements." (Emphasis added.)
We hold that the trial court was correct in construing the foregoing provision to include the clearing of unimproved land.
In its conclusions of law, the trial court held that the monies derived from the sale or lease of mineral rights by FSTC are properly considered trust funds to be used for the benefit of all lessees. Appellees argue that this ruling is authorized in light of the FSTC constitution and lease agreements. We agree.
Article Eight, § 2, of the FSTC constitution provides that FSTC will "convert into the treasury of the Corporation for the common benefit of its members, all values attaching to such lands, not arising from the efforts and expenditures of the lessees." (Emphasis added.) The first clause of the agreements contained in the standard lease also provides that "all values attaching to such lands" (emphasis added) will be held for the common benefit of FSTC's lessees.
Bearing in mind the principle that a contract is construed most strongly against the party who drafted it, Rivers v. Oakwood College, 442 So.2d 74 (Ala.1983), we hold that the trial court did not err in holding that monies derived from the sale or lease of mineral rights are trust funds to be used for the benefit of all lessees.
In its conclusions of law, the trial court also held that the adoption of the "Revised Standard Lease" was a breach of the contract FSTC had with each lessee *1241 under the standard lease to maintain a trust for the rent money received from all lessees for the equal benefit of all lessees. Although we did not directly address this question in our original opinion, we now hold, based on the express provisions of the standard lease, that the trial court did not err in concluding that FSTC had breached its contract with the lessees who hold lands under the standard lease. The standard lease states that FSTC will "convert into the treasury of the Corporation for the common benefit of its lessees all values attaching to such lands" and that "no parts of the rents paid by [the lessee] ... shall be appropriated as dividends to its members or any other persons, but that all shall be administered as a trust fund for the equal benefit of those leasing its lands." (Emphasis added.) We construe these provisions to grant the lessees under the standard lease the right to have all rents paid by all lessees administered as a trust fund for the benefit of all lessees.
APPLICATION FOR REHEARING OVERRULED; OPINION EXTENDED.
MADDOX, JONES, BEATTY, and STEAGALL, JJ., concur.
ALMON, J., not sitting.
NOTES
[1] No question is presented in this case as to whether § 10-4-190 is constitutionally infirm in any manner such as a denial of equal protection.
[1] On original deliverance, we stated that we were applying the internal demand requirement as set forth in Rezner v. Fairhope Single Tax Corp., 292 Ala. 456, 296 So.2d 166 (1974). A careful reading of Rezner reveals that this requirement was apparently applied to non-member lessees. We have gone to the record in Rezner and have determined that, in fact, the complainants who were deemed subject to the rule were both member and non-member lessees. Our decision on rehearing in this case overrules Rezner to the extent that the internal-demand requirement was made applicable to non-member lessees.
[2] The trial court found that the annual rental for land is the "fair rental value." This term is found in FSTC's "Declaration of Incorporation," which is not a part of the non-member lessees' lease contracts with FSTC.