285 So.2d 87

**OPINION OF THE JUSTICES.**

**No. 212.**

Supreme Court of Alabama.

Oct. 16, 1973.

The Governor of the State of Alabama, pursuant to Title 13, Section 34, Code of Alabama 1940, as amended, requested an advisory opinion of the Supreme Court of Alabama concerning his right to appoint a person to whom he was related by marriage to fill a vacancy on the bench of the Circuit Court for the Thirty-Second Judicial Circuit. The questions propounded appear in the opinion.

Questions 2 and 4 answered; questions 1 and 3 not answered as not raising constitutional issues.

Honorable George C. Wallace
Governor of the State of Alabama
State Capitol
Montgomery, Alabama

Dear Governor Wallace:

We acknowledge receipt of your inquiry filed with the Clerk of the Supreme Court of Alabama on October 2, 1973, relating to a proposed appointment by you, as Governor of the State of Alabama, of the Honorable Fred Folsom to the office of Circuit Judge of the Thirty-Second Judicial Circuit of Alabama. You propound four questions:

"1. Would an appointment of the Honorable Fred C. Folsom to the position of Circuit Judge violate the provisions of Title 55, Section 15(1), Code of Alabama 1940, as amended?

"2. Does Title 55, Section 15(1), Code of Alabama 1940, as amended, violate the constitutional provisions of Article 6, Section 154, Constitution of Alabama 1901, by placing a legislative limitation on the constitutional qualifications of a Circuit Judge?

"3. Would an attempted appointment of the Honorable Fred C. Folsom to the position of Circuit Judge of the Thirty-Second Judicial Circuit be void under the provisions of Title 55, Section 15(1), Code of Alabama 1940, as amended?

"4. Does Title 55, Section 15(1), Code of Alabama 1940, as amended, violate the provisions of Article 3, Sections 42 and 43 and/or Article 6, Section 158, Constitution of Alabama 1901, by legislatively restricting the constitutional authority of the Governor to appoint Circuit Judges?"

■ Two of your questions do not raise constitutional questions, and two do. Combining the constitutional questions, 2 and 4, for the sake of brevity, we shall not treat them separately.

Your request reads, in part, as follows:

"It is my desire to appoint the Honorable Fred C. Folsom to this vacancy. He meets all of the qualifications of Article 6, Section 154, Constitution of Alabama 1901, and is willing to accept such appointment. However, there arises the question of a possible constitutional conflict with Title 55, Section 15(1), Code of Alabama 1940, as amended, which provides, inter alia, that no officer of the State shall appoint any person related to him within the fourth degree of affinity to any job, position or office of profit with the State, and that any person related to the appointing authority within that prohibited degree shall be ineligible to serve, and any such appoint-

ment, or attempted appointment, shall be void. Any relationship which I may have to the Honorable Fred C. Folsom arises out of my marriage to Cornelia Wallace, since I am not related by consanguinity. My wife, Cornelia, is the daughter of Ruby Folsom Ellis, who is the daughter of J. M. Folsom. J. M. Folsom was the father of Cecil Folsom who in turn is the father of Fred C. Folsom. J. M. Folsom thusly was the grandfather of both my wife Cornelia Wallace and Fred Folsom.

"It is both my personal desire and my legal duty to comply with all of the laws of the State of Alabama, and I am informed and convinced that the Honorable Fred C. Folsom does not and would not accept such an appointment, take the oath of office, or enter upon the duties of Circuit Judge if there is any question of his constitutional right to do so, as substantial interests of the people of the Thirty-Second Judicial Circuit are involved."

■ It is our opinion that Honorable Fred C. Folsom is related to you within the fourth degree of affinity as computed by the civil law rule. Owen v. State, 255 Ala. 354, 51 So.2d 541. (The Nolan Chart of Relationships and Degrees of Kindred is included in that opinion).

■ The Supreme Court of Florida, in discussing their Anti-Nepotism Statute in State v. Keefe, 111 Fla. 701, 149 So. 638, stated:

" 'Nepotism' has been defined as the bestowal of patronage by public officers in appointing others to offices or positions by reason of their blood or marital relationship to the appointing authority, rather than because of the merit or ability of the appointee. The Florida act should be construed in the light of its obvious purpose to discourage 'nepotism' as above defined.

\*    \*    \*    \*    \*    \*

"So the reason for not applying a statute of this kind to a class of appointees such as school teachers, whose merit must be established before they are permitted to be employed at all, is found in the fact that the Legislature has by other complete statutes, not in terms modified or repealed by this one, provided a special system for the appointment and tenure of employment for school teachers. The requirements of this separate Code of laws afford adequate protection against appointments other than upon proved merit, which is all that an 'Antinepotism' law can constitutionally be supposed to cover and still remain within the police power, under the guise of which it is enacted."

Nepotism statutes, being highly penal, must be strictly construed. 67 C.J.S. Officers § 22, p. 133.

■ This court has not construed our Anti-Nepotism Statute, Act No. 588, Acts of Alabama 1963, Vol. 2, p. 1285, listed in the 1958 Recompilation as Tit. 55, § 15(1). We opine that the intent and purpose of the statute is to prohibit the appointment or employment by the appointing authority of persons related to him who will serve in subordinate jobs, positions or offices of profit in the State government. Historically, that has been the reason for the enactment of such statutes throughout the United States.

A circuit judge is a member of the Judicial Branch of the government which, under our Constitution, is a separate and equal branch of the government. A judge is not subordinate to the Executive Branch of the government or the Legislative Branch of government. Once appointed, he is not responsible to the appointing authority, the Governor, or to the Legislature and neither the Governor nor the Legislature exercises any control or supervision over an appointed circuit judge. His appointive term is limited by Section 158 of the Constitution, and any subsequent and consecutive tenure is dependent on his election by the people.

■ It is our opinion that the Legislature has no authority to restrict by statute the qualifications for circuit judges stated in Section 154 of the Constitution, or to impair the right of appointment of judges by Section 158 of the Constitution.

■ It is, therefore, our opinion that Act No. 588 does not apply to a gubernatorial appointment of a circuit judge, and if the proposed appointee meets the constitutional qualifications for that office, he may be appointed to it.

We are not to be understood as opining that Act No. 588 is invalid or unconstitutional. There is a proper field for its operation. But it, like all statutes, must be deemed to be limited by, and subservient to, the provisions of our State Constitution.

■ Therefore, where the Constitution confers upon the Governor the power to make appointments to judicial office, and further specifies the qualifications of those eligible for such appointment, the Legislature cannot limit, by statute, those qualifications included in the Constitution, either directly or indirectly.

■ Conversely, when the qualifications for appointees for positions in State government, either Executive, Legislative or Judicial, are not specified in our Constitution, then the Legislature is free to set for such appointees, any reasonable qualifications as it may deem advisable.

Respectfully submitted,
Pelham J. Merril
Robert B. Harwood
Daniel T. McCall, Jr.
James H. Faulkner
Richard L. Jones
Associate Justices

We agree with the opinion that questions (1) and (3) cannot be made the proper subject of an advisory opinion.

The statutory authority for the rendering of advisory opinions is Title 13, Sec-

tion 34, Code of Alabama, 1940, as amended, which states, viz:

"The governor by a request in writing, or either house of the legislature, by a resolution of such house, may obtain written opinion of the justices of the supreme court of Alabama, or a majority thereof, on *important constitutional questions.*" (Emphasis added)

In the first advisory opinion handed down under this statute, issued on June 1, 1923, this court upheld the constitutionality of the Act, but made it clear that opinions would be rendered only on "important constitutional questions." In re Opinions of the Justices, 209 Ala. 593, 96 So. 487, 489, 492, 493 (1923).

This court has consistently held that inquiries relating to matters of statutory construction and not to constitutional questions cannot be considered by this court on request for an advisory opinion. Opinion of the Justices, 276 Ala. 239, 160 So.2d 648 (1964); Opinion of the Justices, 256 Ala. 158, 53 So.2d 739 (1951); Opinion of the Justices, 255 Ala. 656, 53 So.2d 367 (1951); Opinion of the Justices, 253 Ala. 111, 43 So.2d 3 (1949); Opinion of the Justices, 249 Ala. 525, 32 So.2d 303 (1947).

It is clear that questions (1) and (3) request this court to construe and interpret Title 55, § 15(1), Code of Alabama, 1940, as amended, without regard to the constitutionality of that section. No "important constitutional question" is presented as required by Title 13, § 34. This court, therefore, is without authority to answer questions (1) and (3).

As to questions (2) and (4), the Justices have stated many times that "the scope of inquiries for advisory opinions, contemplated by Title 13, § 34, Code of Alabama, 1940 [as amended], does not authorize the Justices to give opinions as to the validity of acts which have already passed the Legislature and no action of the Governor is dependent on their opinion." Opinion of the Justices, 286 Ala. 156, 238 So.2d 326

(1970); Opinion of the Justices, 267 Ala. 110, 100 So.2d 565 (1958); In re Opinion of the Justices, 264 Ala. 452, 88 So.2d 778 (1956).

The only exception to this rule is as stated in Opinion of the Justices, 270 Ala. 147, 116 So.2d 588 (1959), that it has been the policy of the Justices, as announced in Opinion of the Justices, 267 Ala. 110, 100 So.2d 565, to refrain from rendering an advisory opinion upon a statute already enacted, as distinguished from pending legislation. This refusal to answer such inquiries is based upon the reasoning that the solution should be had in *adversary proceedings* and also that there was no occasion for the advice of the Justices to the Governor as a guide for his action where he had already acted. The Justices have not, however, made this policy an unvarying rule, but have given their opinions upon a statute already passed in those cases in which it has seemed to them that an advisory opinion was necessary for the guidance of the Governor in taking some *affirmative action required by the statute.*

Thus, it seems clear that the only exception to the well established rule that advisory opinions will not be given after-the-fact is when the challenged statute requires some affirmative action on the part of the Governor. The statute in question here is Title 55, § 15(1), Code of Alabama, 1940, as amended (the Anti-Nepotism Statute), which does not require any affirmative act on the part of the Governor. By its terms, this statute does not require the Governor, or anyone else, to do anything; the statute is merely prohibitory.

Thus, it seems clear to us that the statute in question does not come within the purview of the narrow exception to the general rule that the Justices will not issue an advisory opinion on a statute already passed by the Legislature, signed into law by the Governor and which requires no affirmative act on the part of the Governor.

Thus, it is our opinion that to answer questions (2) and (4) would broaden the

scope of the advisory opinion jurisdiction of this court. In the past, it has been the policy of the court to limit this function, as we have heretofore pointed out. There is good reason to restrict the scope of advisory opinions.

Under our advisory opinion procedure, there is no opportunity afforded to opposing parties to present their respective sides and the applicable law. Usually, there are no briefs. Only occasionally will an advocate file a brief or will an amicus curiae brief be filed. Seldom, if ever, does this court receive briefs from each side. No opportunity for oral argument is afforded.

On the other hand, the adversary system permits all interested parties to have their "day in court." The very nature of the judicial process mandates that decisions be rendered only after all sides have presented their respective views. Furthermore, as this court has heretofore pointed out, "The end result of such [adversary] proceedings would be of binding force, whereas the opinions promulgated under Title 13, supra [§ 34, et seq.] are not." In re Opinion of the Justices, 254 Ala. 177, 47 So.2d 655 (1950).

To conclude, we would wish to be clearly understood that we would not decline to answer the Governor's questions (2) and (4) should they properly fall within the purview of the advisory opinion procedure. We do not think it is wise to expand this procedure when we are without the benefit of an adversary hearing, briefs and oral argument.

To answer the Governor's questions (2) and (4), in our opinion, would lie outside the settled construction this court has placed on advisory opinion procedure and would not comport with sound judicial precepts.

Respectfully,

Howell T. Heflin
Chief Justice

James N. Bloodworth
Hugh Maddox
Associate Justices.