To The Honorable Speaker and ■
Members of the House of Representatives State Capitol
Montgomery, Alabama
Dear Sirs and Madam:
The Chief Justice has received a letter from Hon. John W. Pemberton, Clerk, House of Representatives, dated May 20, 1976, forwarding a copy of House Resolution No. 97 in which the House has requested our opinions as to the constitutionality of House Bill No. 471.
House Resolution No. 97 requests that we answer the following questions under authority of Title 13, section 34, Code of Alabama 1940, viz.:
“(1) Does the bill violate the provisions of The Fifth (S) Amendment to the Constitution of the United States or Art. 1, Section 13 of the Alabama Constitution against the taking of property without due process of law ?
“(2) Does the bill violate the provisions of The Fifth (5) Amendment to the Constitution of the United States or, Art. 1, Section 22 of the Alabama Constitution prohibiting the impairment of of contracts?”
In accordance with your request, we answer your inquiries as follows: *126 Code of Alabama 1940) and provides that any such corporation “shall, as soon as practicable after the enactment of this act, amend its corporate charter to provide that each of the lessees of its corporate property shall be entitled to vote the same as a member in the management of its affairs.”
*125 Our answer to your question (1) is “yes.”
Our answer to your question (2) is “yes.”
H.B. 471 relates to single tax corporations (organized under Title 10, section 168,
*126 Title 10, section 168, Code of Alabama 1940, (as amended by Act No. 445, Acts of Legislature 1966 Special Session, p. 602, approved September 12, 1966) provides, inter alia, that ten or more persons may associate themselves together and form a single tax corporation, that the charter shall be perpetual, “subject to revocation at any time by the legislature,’’ that the corporation may elect its own officers and adopt such constitution and bylaws as it may see fit so long as they are not in conflict with the Constitution or laws of this state, that such corporation may buy, sell, lease and mortgage real estate, build wharves, boats, waterworks, electric power works, schools, libraries, parks, etc., “for the mutual benefit of its members,” and that it "may admit such other persons to participate in its benefits as it may see fit and upon such conditions as it may impose.’’ [Emphasis supplied.] We judicially know that there is one single tax corporation in Alabama. See Fairhope Single Tax Corporation v. Melville, 193 Ala. 289, 69 So. 466 (1915). There, the history of Title 10, section 168, and its conception in Henry George’s Progress and Poverty (1879) is discussed.
With this background, we move to consider the provisions of the United States and Alabama Constitutions to which your questions are directed.
Although you have asked whether H.B. 471 would, if enacted, violate the due process clause of the fifth amendment to the U. S. Constitution, it is more appropriate that we consider whether H.B. 471 would violate the due process clause of the fourteenth amendment, of which the first section reads as follows:
“All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.” [Emphasis supplied.]
Section 13, Alabama Constitution of 1901, concerning which you have also asked, reads as follows:
“That all courts shall be open; and that every person for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay.” [Emphasis supplied.]
See also Alabama Constitution of 1901, section 6.
■ In the context of Title 10, section 168, we equate “members” with “stockholders,” and we assume, without deciding, that the rights which members exercise and enjoy in the management of the corporation are “property rights” within the meaning of the fourteenth amendment. See Walsh v. State, 199 Ala. 123, 74 So. 45, 2 A.L.R. 551 (1917); Ayers v. Burley Tobacco Growers Cooperative Ass’n, 344 S.W.2d 836 (Ky.1961); Faunce v. Boost Co., 15 N.J.Super. 534, 83 A.2d 649 (1951); Lord v. Equitable Life Assur. Society, 194 N.Y. 212, 87 N.E. 443 (1909); Fein v. Lanston Monotype Machine Co., 196 Va. 753, 85 S.E.2d 353 (1955).
We think that for the legislature to mandate that lessees be permitted to vote the same as members in the management of the “single tax corporation” organized under Title 10, section 168, supra, would clearly grant to those not members the same rights, privileges and benefits as are accorded members and would deprive the members of their property rights in the *127 management of the corporation without due process of law. The legislature cannot by legislative edict transfer property from one person to another. Sadler v. Langham, 34 Ala. 311 (1859).
“A stockholder may not be deprived of the property value of his stock or the rights inherent in its ownership, except by his consent or lawful process.”
Fein v. Lanston Monotype Machine Co., supra at 362.
“The right to vote was a basic contractual right. It was an incident to membership or of the property in the stock, of which the stockholder or member cannot be deprived without his consent.”
Faunce v. Boost Co., supra, at 652.
You have also asked whether H.B. 471 would, if enacted, violate state and federal constitutional provisions against impairment by the state of the obligation of contracts. Section 22, Alabama Constitution of 1901, reads as follows:
"That no ex post facto law, nor any law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment.” [Emphasis supplied.]
See also Article I, section 10, U.S. Constitution.
Charters of corporations have been held to be contracts between the legislature and the corporations. State of Alabama v. Alabama Bible Society, 134 Ala. 632, 32 So. 1011 (1902). It would seem, therefore, that the legislature would be prohibited from altering, amending, or revoking charters which it has granted. It was so held by the Supreme Court of the United States in 1819 in Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629. However, the Alabama Constitution also provides, in section 238,
“The legislature shall have the power to alter, amend, or revoke any charter of incorporation now existing and revocable at the ratification of this Constitution, or any that may be hereafter created, whenever, in its opinion, such charter may be injurious to the citizens of this state, in such manner, however, that no injustice shall be done to the stockholders.” [Emphasis supplied.]
As a result of this provision, the legislature’s right to alter, amend or revoke charters it has granted becomes part of the charter/contract itself. The Dartmouth College problem has thus been avoided.
However, the “reserved power” of the legislature under section 238 is not unlimited. Each section of our Constitution must necessarily be considered in pari materia with all other sections.
In Ayers v. Burley Tobacco Growers Cooperative Association, supra, the Court of Appeals of Kentucky considered whether the legislature could amend the statute under which the association was incorporated to permit the board of directors to amend the articles of incorporation so as to extend the corporate existence. Prior to' the statutory amendment a vote of the majority of the members was also necessary to amend the articles of incorporation. Although the court found that, under the circumstances, there was not a substantial impairment of the voting rights of the members, it stated, inter alia,
“It will be noted that the exercise of the reserved power is not denied or prohibited. It is only limited. It may be exercised so as to effect changes that will not defeat or substantially impair rights vested under the grant and it may be exercised to promote the due administration of corporate affairs.
“We must concede that voting on amendments to articles of incorporation is a right vested in each member and the courts will not permit such rights to be *128 substantially impaired or taken without due process of law.”
Id. at 839.
In Lord v. Equitable Life Assurance Society, supra, the Court of Appeals of New York considered whether the legislature had the power, under a “reservation of power,” to enact a statute which provided,
“ . . . in substance, that any stock life insurance company may by the vote of a majority of the directors, when authorized by stockholders holding a majority of the capital stock, confer upon its policy holders the right to vote for all or any less number of the directors.”
This statute is very similar to H.B. 471, except that the extension of voting rights in the New York statute was optional. Nevertheless, the court held that the right of a stockholder to vote is a vested right of property and stated,
“ . . . No reservation, for instance, could authorize a law giving to policy holders the capital stock belonging to the stockholders. As the property of stockholders cannot be given away either in whole or in part, it follows that the gift of any right so connected with their property as to be essential to its preservation and existence would be a violation of primary rights.”

“ . . . To absolutely deprive him of the right to vote therefore is to deprive him of an essential attribute of his property. To so undermine that right as to essentially affect its power of protection would, under ordinary circumstances, undermine the right to property involved in the ownership of stock.
Id. at 448-49. In this case, the New York court found extraordinary circumstances justifying the amendment as a valid exercise of the legislature’s “reserved power.” We, however, find no such extraordinary circumstances on the face of H.B. 471 or Title 10, section 168, which would permit us to hold that H.B. 471 is a valid exercise of the legislature’s power under section 238, supra.
We hasten to add, that we do not say that the legislature may not, under section 238, supra, alter, amend, or even revoke the charter in question. It cannot, however, alter or amend the charter, as here proposed, so as to deprive members of rights guaranteed them under the federal and state constitutions. We simply say that H.B. 471, if enacted into law, would deny the members of a single tax corporation heretofore created under Title 10, section 168, supra, of “due process of law” and would “impair the obligation of existing contracts” under the federal and state constitutions.
We close with this caveat. We have rendered this advisory opinion as promptly as possible, believing that the House of Representatives is interested primarily in receiving timely answers to its questions. We point out, however, as we have previously, that time has not permitted a thorough study on our part. Although we have been favored with amicus curiae briefs, we have not had the advantage of an adversary proceeding, at which facts would have been developed and the issues more clearly defined. See Opinion of the Justices, 291 Ala. 581, 586, 285 So.2d 87 (1973).
HOWELL T. HEFLIN Chief Justice
PELHAM J. MERRILL
JAMES N. BLOODWORTH
ALVA HUGH MADDOX
JAMES H. FAULKNER
RENEAU P. ALMON
JANIE L. SHORES
T. ERIC EMBRY Associate Justices