624 P.2d 530 (1981)
NEW MEXICO STATE BOARD OF EDUCATION, Petitioner,
v.
BOARD OF EDUCATION OF ALAMOGORDO PUBLIC SCHOOL DISTRICT NO. 1, Respondent.
Sharon BRYANT, Petitioner,
v.
BOARD OF EDUCATION OF ALAMOGORDO PUBLIC SCHOOL DISTRICT NO. 1, Respondent.
No. 13237, 13238.
Supreme Court of New Mexico.
February 25, 1981.
*531 Jeff Bingaman, Atty. Gen., John F. Kennedy, Asst. Atty. Gen., Santa Fe, for State Bd. of Ed.
Jones, Gallegos, Snead & Wertheim, Steven L. Tucker, Santa Fe, for Sharon Bryant.
Overstreet & Sandenaw, S. Thomas Overstreet, Alamogordo, for Bd. of Ed. Alamogordo Public School Dist. No. 1.

OPINION
EASLEY, Chief Justice.
Sharon Bryant was terminated by the Alamogordo School Board (Local Board). The sole reason given was that her father was elected as a member of the Local Board and that Board ruled that her retention is prohibited by Section 22-5-6, N.M.S.A. 1978, the anti-nepotism law. She appealed the decision to the New Mexico State Board of Education (State Board), which reversed the decision of the Local Board. The Local Board appealed the decision of the State Board to the Court of Appeals, which reversed the State Board's decision. We granted certiorari and reverse the Court of Appeals, upholding the decision of the State Board in favor of Bryant.
The dispositive issue is whether Section 22-5-6 prohibits the continued employment of a tenured teacher whose relative is elected to the school board, or whether the section relates only to the initial hiring of a teacher whose relative is a member of the board. Bryant also raises issues concerning the constitutionality of her termination. However, in view of our disposition of the central issue in this case we find it unnecessary to consider the constitutional issues.
Bryant was first employed for the 1975-76 school year, at which time she was not related to any member of the Local Board. After teaching for three years she acquired tenure upon the execution of her 1978-79 employment contract. Her father, desiring to seek election to the Local Board, contacted an assistant attorney general for the State Department of Education for an opinion as to whether his election would affect the continued employment in the school district of members of his family. He was advised that the nepotism statute had been interpreted not to affect those persons already employed by a local school district at the time a relative is elected to the board. The Local Board also requested an opinion and received the same answer. Bryant's father was elected to the Local Board and assumed office in March 1979. Although she had caused no trouble whatsoever, had received high marks for her performance as a teacher and was recommended for reemployment by the Local Board's superintendent, her contract was not renewed for the 1979-80 school year. The only reason given for the failure to renew her contract was *532 that her relationship to a member of the Local Board constituted a violation of the nepotism statute.
The record in this case shows that the Attorney General's office has consistently interpreted the statute to apply only to the initial hiring of teachers and that there has been widespread reliance upon this interpretation of the statute by school boards throughout the state. The evidence includes eleven letters written between 1972 and 1979 from the Attorney General's office to various persons who inquired about the proper interpretation of the statute. The letters uniformly interpret the statute to apply only to the initial hiring of teachers.
The Court of Appeals held that there was no room for construction, that the statute is plain and unambiguous and that it means that the Local Board could not approve the reemployment of Bryant because of her father's election to the Local Board.
The applicable statute is Section 22-5-6, N.M.S.A. 1978, which provides as follows:
No local school board shall employ or approve the employment of any person in any capacity by a school district if the person is related by consanguinity or affinity within the first degree to any member of the school board governing the district. This section does not prohibit the continued employment of any person who is employed by a school district on July 1, 1972 and who, on that date, is related within the prohibited degree to a member of the governing school board.
Where a statute is ambiguous or its meaning unclear, the court may resort to the rules of construction in order to resolve the ambiguity. Keller v. City of Albuquerque, 85 N.M. 134, 509 P.2d 1329 (1973). Interpretation is permitted where there is any doubt as to the meaning of the words. Perea v. Baca, 94 N.M. 624, 614 P.2d 541 (1980). Whether an ambiguity exists is a question of law to be decided by the court. Thompson v. Occidental Life Ins. Co. of Cal., 90 N.M. 620, 567 P.2d 62 (Ct.App. 1977), cert. denied, 91 N.M. 4, 569 P.2d 414 (1977). Thus the initial question presented is whether the meaning and application of the statute under these circumstances is free from doubt, or whether it is ambiguous and subject to construction.
We note first that the term "employ" has, in a different context, been held to be synonymous with "hire," or "appoint." Board of Com'rs v. Department of Public Health, 44 N.M. 189, 100 P.2d 222 (1940). But the Local Board contends that since teachers are hired on a one-year contract requiring annual review and renewal, the renewal of a teacher's contract is clearly to "approve the employment" of a teacher within the terms of the statute.
The Certified School Personnel Act, Section 22-10-1 through 22-10-26, N.M.S.A. 1978 (Orig. Pamp. and Cum. Supp. 1980), refers to the renewal of a teacher's contract as "reemployment." § 22-10-12. The nepotism statute makes no reference to the "reemployment" of teachers. In the absence of notice of reemployment or termination, the teacher's contract is automatically renewed for the ensuing year. § 22-10-12. In view of this provision for automatic renewal, the annual reemployment process resembles merely a procedure for regular review of the teacher's performance rather than a procedure to "approve the employment" of a teacher. Absent explicit termination, the teacher's employment continues.
Furthermore, a school board cannot refuse to reemploy a tenured teacher except after notice and hearing, and a finding of good and just cause for termination. § 22-10-15.
These provisions conflict with the Local Board's assertion that the nepotism statute is free from ambiguity and clearly prevents the reemployment of a teacher whose relative has been elected to the school board. Since a teacher's employment continues automatically absent termination by the school board, it is far from clear that every annual renewal of the contract is an "approv[al] *533 of employment" within the terms of the nepotism statute.
The history of uncertainty as to the meaning of the nepotism statute is further evidence of its ambiguity. It has been stated that an ambiguity exists where a provision is fairly susceptible of different constructions by reasonably intelligent men. See Atlas Assur. Co. v. General Builders, 93 N.M. 398, 600 P.2d 850 (Ct.App. 1979). Clearly, the nepotism statute is such a provision.
We hold that the meaning and applicability of the nepotism statute in the present context is unclear. To resolve this ambiguity, we turn to the appropriate rules of statutory construction.
The guiding principle of statutory construction is that the statute should be interpreted consistent with legislative intent. State ex rel. Newsome v. Alarid, 90 N.M. 790, 568 P.2d 1236 (1977). In ascertaining the legislative intent, we look not only to the language used in the statute, but also to the object sought to be accomplished and the wrong to be remedied. Chavez v. State Farm Mutual Automobile Ins. Co., 87 N.M. 327, 533 P.2d 100 (1975). Legislative intent is to be given effect by adopting a construction which will not render the statute's application absurd or unreasonable and will not lead to injustice or contradiction. State v. Nance, 77 N.M. 39, 419 P.2d 242 (1966), cert. denied, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967).
The object of Section 22-5-6 is clearly to prevent nepotism in the hiring of school employees. The hiring of a teacher closely related to a member of the school board justifiably arouses public suspicion that the teacher was hired on the basis of relationship rather than merit. Such suspicions, however, relate only to the initial hiring of the teacher. There is no reason to suspect nepotism in the continued employment of a tenured teacher whose competency has been established by years of service, merely because a family member is elected to the school board at some time during the teacher's career.
The interpretation of the statute adopted by the Local Board and the Court of Appeals would lead to inconsistencies and conflicts with other statutory provisions, such as Section 22-10-14, N.M.S.A. 1978 (Cum. Supp. 1980), which affords tenure rights and Section 22-10-17, N.M.S.A. 1978, which outlines the procedure to be followed if certified school personnel are discharged during the term of a written contract. The refusal to reemploy a tenured teacher or discharge of a certified employee during the contract period must be based on "good and just cause." §§ 22-10-15, 22-10-17.
A paragraph in Bryant's contract provides as follows:
4. This contract may be terminated by the Board for cause, including unsatisfactory work performance, incompetency, insubordination, physical or mental inability to perform the required duties or for any other good and just cause, Provided, that any such termination may be effected only in accordance with the New Mexico Statutes and the rules and regulations of the State Board of Education.
Thus based on the tenure system and the provisions in her contract Bryant could continue in her teaching profession so long as her work was satisfactory.
The nepotism statute and the teacher tenure statutes serve a common public purpose. Each favors employment on the basis of merit. The teacher tenure system is intended to encourage qualified personnel to make a lifetime profession of teaching, to stimulate them to seek positions in the school systems requiring qualifications of teachers, to protect them in their employment from the whims of those possibly politically minded, and to insure their continuance in employment. Ortega v. Otero, 48 N.M. 588, 154 P.2d 252 (1944). Nepotism statutes are aimed at avoiding inefficiency in public office by preventing officials from favoring their relatives and appointing *534 those who may not be qualified to serve. Backman v. Bateman, 1 Utah 2d 153, 263 P.2d 561 (1953).
The interest of the State is to continue the employment of qualified and experienced personnel and not to terminate employment without "good and just cause." The termination of qualified, tenured teachers for the sole reason that a relative has been elected to the school board would conflict with the purposes of the tenure statutes and would unjustly and unreasonably interfere with ability of teachers to pursue their profession. We cannot assume that the Legislature intended such drastic consequences in their attempt to prevent nepotism in the hiring of teachers.
Examination of other nepotism statutes enacted by the Legislature is also appropriate in determining legislative intent. See State v. Gonzales, 78 N.M. 218, 430 P.2d 376 (1967). Neither Section 10-1-10, N.M.S.A. 1978 (Repl.Pamp. 1980), relating to hiring by elected or appointed public officials, nor Section 29-2-6, N.M.S.A. 1978 (Repl. Pamp. 1979), relating to the hiring of state police require the removal of a public employee or commissioned member of the state police in the event that a relative should assume a particular office. It is well established that statutes in pari materia should, as far as reasonably possible, be construed consistently. New Mexico Mun. L., Inc. v. New Mexico Envir. Imp. Bd., 88 N.M. 201, 539 P.2d 221 (Ct.App. 1975), cert. denied, 88 N.M. 318, 540 P.2d 248 (1975).
The Court of Appeals took note of the Legislature's failure to pass bills introduced in 1977 and 1979 that would have specifically limited the language of Section 22-5-6 to the initial hiring of teachers, and found this to be "exceptionally strong" evidence of a legislative intent that Section 22-5-6 apply to the reemployment of teachers. We disagree. A statute must be interpreted as the Legislature understood it at the time it was passed. Pan American Petroleum Corp. v. El Paso Nat. Gas Co., 82 N.M. 193, 477 P.2d 827 (1970).
The courts of North Dakota and Utah have considered the issue presented here. Both decisions provide support for the construction of the statute adopted here.
In Hinek v. Bowman Pub. Sch. Dist. No. 1, 232 N.W.2d 72 (N.D. 1975), the court upheld the claim of the teacher who had been terminated under a similar nepotism statute. The court stated, "we ... interpret [the word `employed'] to mean `hired', which then limits us to initial employment only." Id. at 74.
In Backman v. Bateman, supra, the court was faced with a statute that clearly related both to the initial hiring and to the continued employment of one where the prohibited relationship arose after the initial hiring. The Utah court found that there was no legitimate justification for requiring the termination of a long-standing employee upon the election of a relative to public office and declared the statute unconstitutional.
Our construction of the nepotism statute accords with that of the North Dakota court in Hinek, supra. This construction also avoids the possible constitutional objections which led the Utah court in Backman to declare their statute unconstitutional. Where a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which upholds its constitutionality. Huey v. Lente, 85 N.M. 597, 514 P.2d 1093 (1973).
We conclude from the foregoing that the intent of the Legislature is best reflected by construing the words "employ" and "approve the employment" to relate only to the initial hiring of teachers.
Reversed.
IT IS SO ORDERED.
SOSA, Senior Justice, and PAYNE, FEDERICI and RIORDAN, JJ., concur.