Danny P. CAUDILL, (Circuit Judge—31st Judicial Circuit), Iris Caudill, Appellants,

v.

JUDICIAL ETHICS COMMITTEE, Appellee.

Stephen L. Bates, (District Judge—15th Judicial District), Appellant,

v.

Judicial Ethics Committee, Appellee.

Eddie C. Lovelace, Appellant,

v.

B.M. Westberry (Chairman—Ethics Committee of the Kentucky Judiciary); Anthony M. Wilhoit; Stephen P. Ryan; James L. Bowling; Uhel O. Barrickman (Members—Ethics Committee of the Kentucky Judiciary); Danny P. Caudill, Judge—31st Judicial District, Appellees.

Nos. 97–SC–000856–OA, 97–SC–000870–OA and 97–SC–000893–OA.

Supreme Court of Kentucky.

May 21, 1998.

As Modified Feb. 18, 1999.

Robert L. Wilson, Wilson & Wilson Law Offices, Jamestown, KY, Brent Caldwell, Stephen G. Amato, McBrayer, McGinnis, Leslie & Kirkland PLLC, Lexington, KY, Richard E. Fitzpatrick, Fitzpatrick, Osborne & Sturgill PSC, Prestonsburg, KY, Richard C. Ward, Penny R. Warren, Wyatt, Tarrant & Combs, Lexington, KY, for appellants.

B.M. Westberry, Paducah, KY, for appellees.

GRAVES, Justice.

This is a review of an opinion of the Judicial Ethics Committee pursuant to Supreme Court Rule 4.310(4). The question under consideration is whether Canon 3B(4) of the Judicial Code of Conduct prohibits a judge from hiring a relative. Circuit Judges Eddie C. Lovelace and Danny P. Caudill, and District Judge Stephen L. Bates all employ their spouses as secretaries or administrative assistants. Joyce Lovelace, Iris Caudill and Lynn Bates were hired as secretaries prior to the judges' appointment to the bench, and each has not less than twelve years experience as a legal secretary.

On July 8, 1997, the Director of the Administrative Office of the Courts (AOC) circulated to all district and circuit judges a copy of Judicial Ethics Opinion JE–88, dated March 19, 1997. This ethics opinion stated that it was improper to compensate a relative with state funds. In response, Judge Caudill requested further clarification from AOC and was directed to contact the Judicial Ethics Committee. Accordingly, Judge Caudill approached the Committee asking whether, pursuant to JE–88, his wife was prohibited from acting as his secretary. The Commit-

tee responded with Judicial Ethics Opinion JE–90, which provides:

> *Question:* May a judge employ his wife as secretary?
>
> *Answer:* No. When a judge employs his wife as secretary, he violates the provisions of the code which prohibit nepotism.

The question presented is whether a judge may employ his wife as his secretary and pay her from the State Treasury. The answer is no because in doing so, the judge violates the provisions of the Code of Judicial Ethics which prohibit nepotism. Canon 3B(4). A judge may employ a relative so long as he or she does not use state funds to compensate that relative.

Consequently, Judges Caudill, Bates and Lovelace sought review of JE–90 in this Court. The Judges argue that JE–90 is over broad and not supported by the language of Canon 3B(4). We agree.

Canon 3B(4), upon which JE–90 is based, states:

> A judge should not make unnecessary appointments. He should exercise his power of appointments only on the basis of merit, avoiding nepotism and favoritism. He should not approve compensation of appointees beyond the fair value of services rendered.

SCR 4.300 Code of Judicial Conduct.[1]

It is clear that the language of Canon 3B(4) does not prohibit judges from hiring relatives, rather it cautions that judges "should ... avoid" nepotism. The controlling requirement in this sentence is that appointments should be made based on merit ("He should exercise his power of appointment only on the basis of merit"). The qualification to this requirement is that appointments should not be based upon nepotism of favoritism ("avoiding nepotism and favoritism"). The language does not say that because of friendship or kinship an appointment based upon merit is prohibited. To reach such a conclusion, one must ignore the

dominant thought in the sentence and focus instead exclusively on the subordinate concept. Upon the statutory language as written, however, an employment selection believed by the appointing authority to be based on merit is not invalid because of kinship or friendship. Thus, we discover nothing in the plain language of 3B(4) to support the interpretation by the Ethics Committee in JE–90.

Moreover, we are of the opinion that the appointment of a relative who is qualified for the position is neither nepotism *per se,* nor prohibited by the Canons of Judicial Ethics. Nepotism has been defined as the "bestowal of patronage by public officers in appointing others to offices or positions by reason of their blood or marital relationship to the appointing authority, rather than because of the merit or ability of the appointee." *State v. Keefe,* 111 Fla. 701, 149 So. 638 (1933); 66 C.J.S. *Nepotism,* p. 6 (1950); *see also Black's Law Dictionary* (6th Ed.1990).

Favoritism based upon relationship is the evil to be eliminated through anti-nepotism provisions. It is the motivation and reasons for hiring which determine whether nepotism is involved, not merely the employment of a relative. Anti-nepotism provisions are aimed at avoiding inefficiency in public office by preventing officials from favoring their relatives and appointing those who may not be qualified to serve. "[A]dequate protection against appointments other than upon approved merits, ... is all that an 'anti-nepotism' law can constitutionally be supposed to cover...." *Keefe, supra* at 638–39.

It appears that the Commission proceeded on the false premise that the appointments were made on the basis of favoritism or nepotism to the exclusion of merit. The facts herein are more readily susceptible to the logical inference that the contrary is true. Before concluding that nepotism is involved, more facts are needed for a rational decision consistent with the intent of the Code. Rather than considering the particular facts and

---

**1.** In comparison, the American Bar Association's Model Code of Judicial Conduct provides, "A judge shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees beyond the fair value of services rendered. Canon 3C(4) (August 1990).

circumstances to determine whether nepotism exists, JE–90 issues a blanket prohibition which, in this case, would have terminated the employment of apparently qualified persons. Our interpretation of the language of Canon 3B(4) is that a relationship cannot be the determining factor in hiring. If the judges followed this rule, the secretaries were hired on merit. There is a presumption that the judges knew and followed the law. Moreover, there is no allegation, much less any evidence, that these appointments were not based on merit.

Other jurisdictions interpreting anti-nepotism provisions have held that such do not apply to continuation of employment when the initial hiring decision was based on merit. *New Mexico State Board of Education v. Board of Education of Alamogordo Public School District,* 95 N.M. 588, 624 P.2d 530 (1981) (no reason to suspect nepotism in continued employment of a teacher whose competency was established through years of service, simply because family member was elected to Board of Education); *Opinion of the Justices, No. 212,* 291 Ala. 581, 285 So.2d 87 (1973) (anti-nepotism statute had no application to gubernatorial appointment of a circuit judge who met constitutional qualifications but was related by marriage to the governor).

We are not unaware that in *Chapman v. Gorman,* Ky., 839 S.W.2d 232 (1992), this Court held that the anti-nepotism statutes, KRS 160 .180 and KRS 160.380, enacted as part of the Kentucky Education Reform Act of 1990 were constitutional. However, the language in KRS 160.180(2)(i) provides that no person *shall* be eligible for membership on a school board who has a *relative* employed by the school district. Likewise, KRS 160.380(2)(f) provides that no superintendent *shall* employ a *relative* of a school board member of the district. Moreover, we find it significant that both provisions contain a grandfather clause. "In situations such as this, where relatives of board members were hired before the board members were elected to their posts, and before the enactment of KERA, there is hardly any likelihood that favoritism was involved." *Id.* at 241. Thus, we are of the opinion that the instant provi-

sion is clearly distinguishable from those upheld in *Chapman, supra.*

We believe the central inquiry regarding nepotism is necessarily whether the individual was qualified for the position at the time of appointment. The relationship between employer and employee, in and of itself, does not appear to be the ethical concern. This is evident from the language of JE–90 to the effect that, "A judge may employ a relative so long as he or she does not use state funds to compensate that relative." It is clear that the Commission's concern is with waste and mismanagement or misallocation of state funds.

The record in this case indicates that Joyce Lovelace, Iris Caudill and Lynn Bates were hired when their husbands were in private practice. Their initial appointment was based on merit and no state funds were expended. Moreover, upon their employers assuming a judicial status, AOC approved the continuing employment of all three women. No inquiry was ever made to determine whether there was a waste of state funds. As AOC approves and pays the salaries of state judicial employees, there can be no allegation of disparate or inappropriate compensation due to relationship. In fact, the judges have no control over the salary schedule of their secretaries. Thus, these cases present no evidence of mismanagement or misallocation of state funds.

A judge's secretary should possess loyalty, confidentiality and competence. From the many years of satisfactory tenure, one may presume or logically infer that these three secretaries possessed a legally sufficient measure of competence. In the absence of some indication to the contrary, there was no basis to conclude that the initial hiring or subsequent retention was not based on merit.

We are of the opinion that the only reasonable interpretation of Canon 3B(4) is a literal construction of its terms. A judge "should exercise his appointments only on the basis of merit, avoiding nepotism and favoritism." That is, a judge should never appoint anyone who is not qualified. However, the judge is not required to exclude a class of otherwise qualified individuals solely on marital status. A judge may act within the dictates of the

Canon by employing his or her spouse as secretary so long as the employee possesses the skills and competence requisite to performing the job duties. The appointment of a relative, if based on merit and ability, simply does not, without exception, equate to nepotism. As such, we conclude that the language of Canon 3B(4) does not support Judicial Ethics Opinion JE–90 and it is hereby vacated.

STEPHENS, C.J., COOPER, GRAVES, JOHNSTONE, LAMBERT, and WINTERSHEIMER, J.J., concur.

STEPHENS, C.J., also files a concurring opinion.

STUMBO, J., not sitting.

STEPHENS, Justice, concurring.

While I find myself in agreement in the result the majority achieves, I cannot concur in their reasoning, it is for this reason that I write this separate concurrence. Judicial Ethics Opinion JE–88 interpreted Canon 3B(4) of the Judicial Code of Conduct and in brief, it found that it was a violation of this Canon to compensate a relative with state funds. Circuit Judge Danny P. Caudill sought guidance from the Judicial Ethics Commission regarding whether it was permissible for a judge to hire his wife as a secretary. JE–90, which was issued in response to Judge Caudill's inquiry, stated unequivocally that it was a violation of the Canon for a Judge to employ his wife as a secretary. Judge Caudill, joined by Circuit Judge Lovelace and District Judge Bates, sought review of JE–90 by this Court.

In examining Canon 3B(4),[1] I believe that this Court can find a sufficient basis to resolve the matter before us within the language of the Canon itself. The language employed by the Canon is permissive rather than mandatory, accordingly, judges are merely encouraged to avoid nepotism, rather than required to do so. I believe that by construing the statute in this fashion we

avoid making a broad ruling which is only too likely to invite mischief in the future.

In comparing the definitions of should versus shall, it becomes evident that their meanings, while similar, are indeed distinct. Should is used to express duty, obligation, necessity, propriety, or expediency. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2104 (3rd ed. unabridged 1993). Shall is used to express a command or exhortation. *Id.* at 2085. Should, while definitely strongly encouraging a particular course of action, is permissive. Shall requires a particular course of action and accordingly, is mandatory.

This Court must accord the words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion. *Bailey v. Reeves,* Ky., 662 S.W.2d 832 (1984); *Dept. of Revenue v. Greyhound Corp.,* Ky., 321 S.W.2d 60 (1959). In this matter we have clear language to interpret and are thus bound to follow it. Shall is mandatory language, while should is permissive language, that while encouraging a certain course of action, does not require that a particular course be followed. *See Hardin County Fiscal Court v. Hardin County Board of Health,* Ky.App., 899 S.W.2d 859 (1995). Since anti-nepotism laws are penal in character, they are to be strictly construed. *Baillie v. Medley,* 262 So.2d 693 (Fla.App. Dist.3). Employing strict construction to the instant case, it is clear that Canon 3B(4) does not prohibit judges from engaging in nepotism or favoritism, but rather merely discourages the practice. In achieving this result the majority achieves in this particular case should not be read as this Court endorsing nepotism or favoritism, rather it should be seen as this Court interpreting the plain language of the law. At this point, I would end my analysis of the instant matter and declare whatever language which followed to be dicta.

However, the majority opinion does go farther and I believe that some of the language is ill-chosen. I disagree with the majority's

---

1. Canon 3B(4) provides:
   A judge *should* not make unnecessary appointments. He *should* exercise his power of appointments only on the basis of merit, avoiding nepotism and favoritism. He *should* not approve compensation of appointees beyond the fair value of services rendered.
   (emphasis added).

definition of nepotism.[2] The majority states that nepotism is the hiring of a person who is unqualified for a job position because of the familial relationship. Nepotism is showing favoritism towards relatives. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1518 (3rd ed. unabridged 1993). Black's Law Dictionary defines nepotism as the bestowal of patronage by public officers in appointing others to positions by reason of blood or marital relationship to appointing authority. BLACK'S LAW DICTIONARY 1039 (6th ed.1990). Giving a family member a position because of the familial relationship rather than merit is an example of nepotism, but is it not the only manifestation. Favoritism is in turn defined as "the treating of one person, family or class of men with special favor or partiality to the correlative neglect of others." WEBSTER'S at 830.

I discuss the definition of favoritism because not only is it implicated by the definition of nepotism, but it is equally discouraged by the statute. Nepotism is simply a subset of favoritism in which the group unfairly benefited are family members. Thus the granting of undue favor to a family member or any other person is equally discouraged by Canon 3B(4). JE–90 does not deal with persons other than the wives of judges serving as secretaries because that question was not posed to the Judicial Ethics Commission. However, given the reasoning of JE–90 and the plain language of Canon 3B(4), I have no doubt that the Judicial Ethics Commission would have been equally critical of the hiring of a friend or other romantic interest on the basis of that relationship. In summary, the issue is not whether or not the individuals in question were qualified, that has never been at issue in this case, the question was whether or not the dictates of Canon 3B(4) were permissive or mandatory.

The majority cites *Chapman v. Gorman*, Ky., 839 S.W.2d 232 (1992), for the proposition that nepotism is concerned with waste and mismanagement as the evils to be avoided, I do not agree with this assessment. Among the barriers to an efficient school system identified by this Court in *Rose v. Council for Better Education, Inc.*, Ky., 790 S.W.2d 186 (1989), were waste, duplication, mismanagement and political influence. *Id.* at 193. Certainly nepotism plays a role in furthering all of these four factors; however, nepotism also damages an institution by undermining the public's confidence in that institution and its operations. The Court often refers to this concept as the appearance of impropriety.

Virtually all anti-nepotism statutes simply prohibit the hiring of persons based on their family relationship without regard to the qualifications of an individual. KRS 160.380(1)(a), (2)(f) (prohibits a superintendent from hiring the relative of a board member to work within that district); *Rosenstock v. Scaringe*, 54 App.Div.2d 779, 387 N.Y.S.2d 716 (1976, 3rd Dept) (law prohibited more than a single family member from serving on the same school district's board of education); *Parks v. City of Warner Robins*, 43 F.3d 609 (11th Cir.1995) (law prohibited relatives of city employees from working in a supervisory position in the same department). By focusing on waste and mismanagement, the majority has ignored the problem created by the public perception that the wives of judges, no matter what their qualifications, will be perceived as having received improper favorable treatment.

I wish to stress that I have no personal animus toward any of the movants in this suit or toward their spouses. I simply believe that the majority in this case has gone farther than is required to reach a decision in this matter and that the language they have employed shall come back to haunt this Court at a later date. The evil that I believe anti-nepotism provisions are designed to combat is the appearance of impropriety which has the inevitable effect of undermining the public's trust in a given institution.

For the reasons stated above, I concur in result only.

---

**2.** I would also like to note that Canon 3B(4) speaks out against favoritism as well as nepotism.