**Harry M. SPARKS, Appellant,**

v.

**Jimmy BOONE, Appellee.**

Court of Appeals of Kentucky.

Dec. 23, 1977.

Nat Ryan Hughes, Murray, for appellant.

Henry O. Whitlow, Thomas B. Russell, Threlkeld, Whitlow & Roberts, Paducah, for appellee.

Before HOWERTON, COOPER and HAYES, JJ.

HOWERTON, Judge.

This is an appeal from a jury verdict dismissing appellant Sparks's libel action against the appellee Boone.

In May 1975, appellant was one of three candidates for state senator in the Democratic primary. Appellant had previously served as Superintendent of Public Instruction for the Commonwealth of Kentucky, an elected office, and he had also served as President of Murray State University until his retirement on September 15, 1973.

On Saturday, May 24, 1975, *The Murray Ledger & Times* published a letter from the appellee in its "Letter to the Editor" section. The letter referred to three subjects during the term appellant served as President of the University. They were (1) a decline in enrollment of full-time students, (2) unresolved tenure problems, and (3) the University's financial condition at the end of appellant's term.

The election was held the following Tuesday, and appellant was defeated.

The center of controversy is the letter, which we herewith quote in full:

Dear Sir:

The upcoming Senate election for the Kentucky General Assembly is a political contest of considerable importance for the citizens of Murray and Calloway County. At a time when more Kentuckians are unemployed than at any other time since the Depression of the 1930's, business is stagnating, and our young people encounter difficulties in finding employment, we need dynamic, imaginative and responsive leadership in Frankfort.

The Murray Ledger & Times, which has served this community well for more than twenty years, has endorsed the candidacy of Dr. Harry Sparks, former President of Murray State University. Usually, I find myself in agreement with the endorsements of our local paper, however, in this endorsement I feel compelled to register my objections. In both its editorial and feature columns, the Ledger & Times has implied Harry Sparks represents strong leadership for Murray and Calloway County. Political leadership, it seems to me, might include forthrightness, openness, the willingness to make needed decisions in the face of unpleasant facts and fiscal responsibility.

A survey of student enrollment at Murray State University will reveal shortly after Dr. Sparks' inauguration as President the number of students full-time enrolling at the University began to decline. Significantly. The decline continued until only recently. Yet in the registrative figures released by the University during Dr. Sparks' tenure as President, that very serious situation was not made clear to the public. Why was the information not made public? What in his capacity as a leader did Dr. Sparks do about this serious problem? Is this forthrightness and openness?

In the face of a declining student enrollment and a tenure policy (adapted by the Sparks administration) regarding a tenure decision on a faculty member after six years of service, why was Harry Sparks' successor confronted with tenure decisions on faculty members who had between seven and eleven years of service? Harry Sparks left Deno Curris a legacy of unpleasant but vital decisions our candidate refused to make. Is that the willingness to make needed decisions in the face of unpleasant facts? Is that leadership?

Why, one might also ask, was Murray State University faced with a serious financial crisis at the time Dr. Sparks retired? What happened to the financial reserve built by Dr. Ralph Woods? Was it necessary to use those reserves to balance the budget? Did the University's financial condition at the end of Dr. Sparks' administration reflect fiscal responsibility or the capacity to make difficult decisions? I think not!

Normally, we are requested to cast our ballots on the basis of a candidate's record. The Ledger & Times has given you one part of the record. I have detailed other aspects of the record which seem to me to merit the serious consideration of you the voters.

s/Jimmy Boone

We have reviewed the record, and we have heard the arguments of counsel, and we are unable to find any proof of actual malice on the part of the appellee, nor has there been an attempt by the appellant to prove actual malice. Indeed, counsel for appellant stated at the close of his proof at trial that "malice need not be proven". Furthermore, we are unable to discover any proof that the publication was made with actual knowledge of its falsity, if any, nor was it made in reckless disregard of the truth.

At the close of all of the evidence, appellee moved for a directed verdict and cited four grounds. First, the words alleged to have been spoken were not libelous but were fair criticism of a candidate for public office. Second, the words complained of were substantially true. Third, at the time the words complained of were published, plaintiff (appellant) was a candidate for the office of Kentucky State Senator and, otherwise, plaintiff was a public figure. Un-

der the provisions of the Constitution of the United States and the Constitution of Kentucky, Sparks is barred from asserting any action concerning the words of which he complained. Fourth, and finally, appellant has shown no malice of the appellee under the terms of the case of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and the doctrine therein developed in subsequent Supreme Court cases.

The trial court overruled appellee's motion and instructed the jury as follows:

1. Published words are libelous and actionable per se, if they are false and directly tend to the prejudice or injury of anyone in his profession, trade or business.

If you believe from the evidence that the publication admittedly made by defendant did not directly tend to the prejudice or injury of the plaintiff in his profession, trade or business, you will find for the defendant.

2. The court instructs the jury that they may award the plaintiff damages if they believe from the evidence that the statements made by defendant in the published letter were, in fact, libelous as defined in the foregoing instructions; and if the jury further believes from the evidence that said statements were false and were known to the defendant to be false when made, or that defendant entertained serious doubt as to the truth of the statements contained therein at the time the publication was made; and the jury believes from the evidence that the publication was made with actual malice, that is, with knowledge that the publication was false or with reckless disregard of whether it was false or not.

Additional instructions were given regarding compensatory damages, punitive damages, a definition of "actual malice," mitigation of damages, and the requirements for a verdict. Neither party has challenged the remaining instructions.

The jury returned the following verdict, "We, the jury, find that the publication made by defendant was not libelous under Instruction No. 1."

■ Appellant argues that the jury verdict was flagrantly against the evidence, and that the instructions were erroneous. We cannot agree with either contention. If anything, the instructions given were more favorable to the appellant than they were required to be under the facts of this case, since it is an undisputed fact that appellant was a candidate for public office at the time of the publication of the letter.

Appellee argues that he was entitled to a preemptory instruction, and that for this reason appellant could not have been prejudiced by the instructions of the court. We agree with this argument.

■ In *New York Times Co. v. Sullivan, supra*, the Supreme Court held that the First Amendment of the United States Constitution provides a conditional immunity from liability in libel actions brought by public figures. This rule prohibits recovery unless appellant proves with "convincing clarity" that a defamatory falsehood was made with "actual malice"—that is, actual knowledge of falsity or reckless disregard of the truth. In this sense, the necessary malice could be shown by proof of actual knowledge of the false statement or by proof of publishing a false statement with reckless disregard for the truth. There was no such proof in the case sub judice. The tone of the letter in no way presents a vicious attack on the appellant, although it was obviously written with the intention of showing another view of the candidate to counter-balance the newspaper's endorsement with the hope of seeing the appellant lose the election.

The rule for public figures was expanded to apply specifically to a candidate for public office. In *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971), the court stated: ". . . Publications concerning the candidates must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office . . . It can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."

When considering such items as actual malice, knowledge of the falsity of the statements, and reckless disregard for the truth, we must consider the evidence before us. The testimony of the appellee and his witnesses indicated that the statements contained in the publication were true to the best of his knowledge. There was evidence of the fact that enrollment of full-time students at Murray State University did decline during appellant's tenure as president. There was evidence of the fact that the University administration succeeding appellant did publish statements that the University was in a financial crisis. There was also evidence of a highly publicized suit brought by eleven teachers at the University, claiming that because of no action to remove them by the Sparks administration, they were entitled to de facto tenure.

Appellant primarily relies on the case of *Tucker v. Kilgore*, Ky., 388 S.W.2d 112 (1965), in which a police officer was entitled to recover a judgment in libel for defamatory remarks made against him. Officer Kilgore was clearly not a candidate for public office, and he was specifically found not to be a "public figure". He was, however, a "public servant," and we are pleased to quote from *Tucker v. Kilgore, supra*, at 116, which reads in part:

> The freedom of "uninhibited, robust and wide-open" debate on public issues guaranteed by the 1st Amendment cannot sensibly be turned into an open season to shoot down the good name of any man who happens to be a public servant.

The attack on Kilgore was flagrant and reckless. The personal attack on Kilgore challenged his fitness and character as a man in an effort to vilify a rival organization of Tucker to which Kilgore belonged.

There must be limits placed on the right of individuals to attack public figures and candidates for public office, but such individuals are always subject to fair comment and criticism when they attempt to put themselves in a good light with the public. For the criticism to be actionable, however, malice must be shown. The requirements for the proof of such malice have been set forth in *New York Times, supra*, and the subsequent Supreme Court decisions.

We need not discuss the instructions and the jury verdict further. For the foregoing reasons, the judgment of the circuit court dismissing the appellant's claim must be affirmed.

All concur.