**KENTUCKY REGISTRY OF ELECTION FINANCE, Appellant,**

v.

**Don BLEVINS, Appellee.**

No. 1999–SC–0890–DG.

Supreme Court of Kentucky.

Sept. 27, 2001.

Rosemary F. Center, Kentucky Registry of Election Finance, Frankfort, Amy D. Cubbage, Sheryl G. Snyder, Brown, Todd & Heyburn, PLLC, Louisville, Counsel for Appellant.

Julius Rather, Lexington, Counsel for Appellee.

GRAVES, Justice.

Appellee, Don Blevins, the Fayette County Clerk, drafted a letter on his private stationery and directed his secretary to deliver it to his employees. The letter reads verbatim:

September 24, 1994

Dear Friend:

My good personal friend, Don Todd, is a candidate for State Senator in this November's election.

Don did a great job as council person. He is an honest man and dedicated to Fayette County.

I'd very much appreciate your vote and support for him.

Sincerely,

/s/ Don W. Blevins

Don W. Blevins

The Fayette County Republican Party Chairman filed a complaint with the Kentucky Registry of Election Finance alleging that the letter violated KRS 121.310(1), which provides:

No person shall coerce or direct any employee to vote for any political party or candidate for nomination or election to any office in this state, or threaten to discharge any employee if he votes for any candidate, or discharge any employee on account of his exercise of suffrage, or give out or circulate any statement or report that employees are expected or have been requested or directed by the

employer, or by anyone acting for him, to vote for any person, group of persons or measure.

The case was presented to the Registry through an Agreed Statement of Facts. Based on its review of the agreed facts, the Registry found probable cause that Blevins had unknowingly violated the statute. The Registry ordered the parties to enter into conciliation proceedings to assess an appropriate civil penalty. Blevins declined to enter into the proceedings. The Registry then referred the case to a three-judge administrative panel for a hearing. The three-judge panel found that Blevins violated KRS 121.310(1) by circulating the letter requesting that Blevins' employees vote for Don Todd.

■ Blevins appealed the finding of the three-judge panel to the Franklin Circuit Court, which affirmed the panel. Next, Blevins appealed to the Court of Appeals, which allowed Blevins to mount a facial constitutional challenge, and ultimately held that the statute was unconstitutional on its face. The Court of Appeals reasoned that the statute's constitutional flaw was that the phrase "have been requested" cast too wide a net and prohibited any number of examples of innocent (non-coercive) political speech. Consequently, the Court of Appeals held that those words had to be stricken from the statute. We too believe that the statute is overbroad as applied, and affirm the Court of Appeals.

In relevant part, KRS 121.310(1) makes it unlawful for an employer to "give out or circulate any statement or report that employees ... have been requested ... to vote for any person ...." The Registry's interpretation limiting the application of the statute to *written* statements and reports is incompatible with the First Amendment. Further, a "request" is so distant in degree from "coercion" as to offend the First Amendment.

■ Clearly, the purpose of KRS 121.310(1) is to prevent an employer from coercing his or her employees into voting a certain way. An employer's "request," such as the one made by Blevins, may seem to be nothing more than a polite entreaty made upon his or her employees, or the employer only may intend mild persuasion. But the line between persuasion and coercion is drawn subjectively and depends on one's point of view. Consequently, a penal prosecution cannot proceed based on the perceptions of the recipient of a letter.

■ The Commonwealth has broad power to place even-handed restrictions on the partisan political activities of public employees like Blevins. *See e.g. U.S. Civil Service Comm'n v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *United Public Workers of America v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *City of Louisville v. FitzGerald,* Ky., 600 S.W.2d 456 (1978). Indeed, such restrictions are deemed necessary in order to ensure that public service is determined by merit and not by patronage. *Nat'l Ass'n of Letter Carriers, supra,* 413 U.S. at 557, 93 S.Ct. at 2886. This power to regulate public employees extends to political expression that would be protected by the First and Fourteenth Amendments if engaged in by private persons. *Broadrick, supra,* 413 U.S. at 616, 93 S.Ct. at 2918. Even though KRS 121.310(1) is not directed at particular, ideology-based groups or points of view, and regulates political activity in an even-handed and neutral manner, it still must meet First Amendment standards.

The 1992 United States Supreme Court case of *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d

305 (1992), places a First Amendment constitutional impediment to the enforcement and application of KRS 121.310(1). In *R.A.V.*, the U.S. Supreme Court invalidated a St. Paul city ordinance which provided for the punishment of acts such as burning crosses, which "arouses anger, alarm or resentment in others on the basis of race, color, creed, religion, or gender ...." *Id.* at 380, 112 S.Ct. at 2541. The Supreme Court found the language of the ordinance fatally unconstitutional, ruling there can be no content discrimination when a government goes about prohibiting speech. Justice Scalia writing for the majority opined: "The First Amendment generally prevents government from proscribing speech ... or even expressive conduct ... because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." *Id.* at 382, 112 S.Ct. at 2543 (citations omitted).

■ The decision in *R.A.V.*, *supra*, places a First Amendment constitutional bar to prosecution of conduct and speech much more egregious and offensive than communications which may coerce, direct, expect, or request votes. It follows then that the First Amendment is a complete and absolute defense to any prosecution under KRS 121.310(1). That is, the greater includes the lesser, and an employer's statement, "I'd very much appreciate your vote and support for him," would be a lesser-included offense of the type of conduct proscribed by the ordinance in *R.A.V.*, *supra*. Since the First Amendment extends so far as to protect hate speech, it likewise protects an employer's communications which are subject to the inference of coercion or direction.

■ Though the effect may be accidental or coincidental, KRS 121.310(1) places an unconstitutional restriction on campaign speech. "It can hardly be doubted that the [First Amendment] constitu-

tional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office." *Sparks v. Boone,* Ky.App., 560 S.W.2d 236, 238 (1977) (quoting *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971)). Moreover, in *Caudill v. Judicial Ethics Commiittee,* Ky., 986 S.W.2d 435, 438 (1999), Justice Stephens, in his concurring opinion, reminds us that laws penal in nature are to be strictly construed.

The First Amendment to the United States Constitution affords, in part, that "Congress shall make no law ... abridging the freedom of speech." Although not absolute, the United States Supreme Court has traditionally granted political speech foremost First Amendment protection against statutes that restrict speech because of its political content. Accordingly, the Court has only upheld such statutes under the strictest of conditions.

In *Meyer v. Grant,* 486 U.S. 414, 420–422, 108 S.Ct. 1886, 1891–1892, 100 L.Ed.2d 425 (1988), the United States Supreme Court stated:

We fully agree with the Court of Appeals' conclusion that this case involves a limitation on political expression subject to exacting scrutiny. *Buckley v. Valeo,* 424 U.S. 1, 45, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). The First Amendment provides that Congress "shall make no law ... abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the Government for a redress of grievances." The Fourteenth Amendment makes that prohibition applicable to the State of Colorado. As we explained in *Thornhill v. Alabama,* 310 U.S. 88, 95, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), "the freedom of speech and of the press, which are secured by the First Amendment against abridgment by the United

States, are among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgment by a State."

Unquestionably, whether the trucking industry should be deregulated in Colorado is a matter of societal concern that appellees have a right to discuss publicly without risking criminal sanctions. "The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." *Id.*, at 101–102, 60 S.Ct. 736. The First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Appellees seek by petition to achieve political change in Colorado; their right freely to engage in discussions concerning the need for that change is guarded by the First Amendment.

The circulation of an initiative petition of necessity involves both the expression of a desire for political change and a discussion of the merits of the proposed change. Although a petition circulator may not have to persuade potential signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate. This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it. Thus, the circulation of a petition involves the type of interactive communication concerning

political change that is appropriately described as "core political speech."

Further in *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346–347, 115 S.Ct. 1511, 1518–1519, 131 L.Ed.2d 426 (1995), the Supreme Court stated:

Indeed, as we have explained on many prior occasions, the category of speech regulated by the Ohio statute occupies the core of the protection afforded by the First Amendment:

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Although First Amendment protections are not confined to 'the exposition of ideas,' *Winters v. New York*, 333 U.S. 507, 510, 68 S.Ct. 665, 92 L.Ed. 840 (1948), 'there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs, ... of course including discussions of candidates ....' *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). This no more than reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,' *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities

of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971), 'it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office.' " *Buckley v. Valeo,* 424 U.S. 1, 14–15, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam).

. . .

When a law burdens core political speech, we apply "exacting scrutiny," and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest. See, e.g., [*First Nat'l Bank v. Bellotti,* 435 U.S. 765, 786, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) ]. Our precedents thus make abundantly clear that the Ohio Supreme Court applied a significantly more lenient standard than is appropriate in a case of this kind.

■ The Blevins' letter enjoys full First Amendment protection. The government generally may not regulate any speech on the basis of content, even if the speech is harmful, unless the speech is necessary to advance some compelling state interest. *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). Here there is no compelling state interest because the Blevins' letter does not affect the reliability of the electoral process. Political expression should not be the basis for imposing penal sanctions on elected officials. The line between the impermissible and the protected is indistinct. To say "I would appreciate your vote" is not an imperative statement. It is equivocal and contingent. It requests an action that only could happen. There is no epistemological certainty.

KRS 121.310(1) is inconsistent with the First Amendment and patronizes the employee because it assumes the employee lacks a free will when voting a secret ballot. Free communication of political speech allows employees to become fully informed on the issues and personalities in order to intelligently exercise their right to vote. Blevins' letter did not cross the threshold of persuasion or impair the important governmental interest of ensuring free elections and assuring the people that the voting process is fair. The words and actions of Don Blevins are constitutionally protected free speech.

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J., GRAVES, KELLER, and STUMBO, J.J. concur.

JOHNSTONE, J., dissents in a separate opinion in which COOPER, and WINTERSHEIMER, J.J., join.

JOHNSTONE, Justice, dissenting.

I, respectfully, dissent from the majority's holding that KRS 121.310 is unconstitutionally overbroad. To reach such a strained conclusion, the majority by necessity ignores basic rules of statutory construction, discards normal rules of judicial review by refusing to consider the validity of the statute which is squarely before it as applied to *the facts of this case,* and sets back Kentucky's compelling state interest in preventing employer coercion of state employees during partisan campaigns to the political dark ages.

The majority states:

Even though KRS 121.310(1) is not directed at particular, ideology-based groups or points of view, and regulates political activity in an even-handed and

neutral manner, it still must meet First Amendment standards.

Op. at 291.

This statement flies in the face of the majority's concession in the preceding lines of the same paragraph that the "Commonwealth has broad power to place even-handed restrictions on the partisan political activities of public employees like Blevins," and that the "power to regulate public employees extends to political expression that would be protected by the First and Fourteenth Amendments if engaged in by private persons." Op. at 291. Instead of embracing this well-reasoned and established precedent, the majority launches into a discussion of cases that deal with flag burning and other egregious restrictions on first amendment rights, *none* of which deal with public employees.

The majority eventually surmises that KRS 121.310(1), when applied to fact situations not before us, is overbroad and, thus, unconstitutional. However, while neither this Court, nor the Court of Appeals, may make additions to a statute to save its constitutionality, both Courts have the duty to construe a statute so as to render it constitutional.[1] Here, KRS 121.310(1) can be rendered constitutional by applying general rules of construction and giving the relevant words of the statute their ordinary meaning.

As a rule of construction, administrative interpretation and implementation of a statute or regulation is highly relevant to the question of whether the challenged regulation is unconstitutional on its face.[2] "Consequently, the apparent overbreadth of a statute can be avoided by a limiting regulation or interpretation."[3] The interpretation urged by the Registry is sufficiently narrow to avoid any constitutional infirmity.

The Registry proffers that the pertinent part of KRS 121.310(1) only applies to the dissemination to employees of a written statement that their employer expects, requests, or directs them to vote for a particular candidate. This interpretation does not offend the plain meaning of the statute.

In relevant part, KRS 121.310(1) makes it unlawful for an employer to "give out or circulate any statement or report that employees ... have been requested ... to vote for any person ...." The Registry's interpretation that limits the application of the statute to *written* statements and reports is not incompatible with the statute's language. The term "give out" can refer to either an oral or written statement or report;[4] "circulate" refers to a statement or report that goes "into the hands of readers;"[5] and both a "statement" and a "report" can. be either oral or written.[6] Further, a "request" is not so distant in degree from "coercion" so as to prohibit speech that is unrelated to the purpose of the statute.

Clearly, the purpose of KRS 121.310(1) is to prevent an employer from coercing his or her employees into voting a certain

---

1. *Musselman v. Commonwealth,* Ky., 705 S.W.2d 476, 477 (1986).

2. *Ward v. Rock Against Racism,* 491 U.S. 781, 795–96, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661, 678 (1989).

3. *State Board for Elementary and Secondary Education v. Howard,* Ky., 834 S.W.2d 657, 663 (1992).

4. Webster's New International Dictionary (*Unabridged* ) (2d ed.1960).

5. *Id.* (emphasis added).

6. *Id.*

way. At first blush, an employer's "request," such as the one made by Blevins, may seem to be nothing more than a polite entreaty made upon his or her employees. Indeed, the employer only may intend mild persuasion. But the line between persuasion and coercion is drawn subjectively and depending on one's point of view. A request that the employer might view as harmless could be viewed as a command by one whose livelihood depends on staying in the employer's good graces. Moreover, a "request" that is innocent on its surface might imply much more by way of what is not said, but is understood nonetheless. Thus, the Registry's interpretation of the statute is consistent with its language and our adoption of its interpretation would not require us to make additions to save its constitutionality.

More importantly, KRS 121.310(1) is constitutional as applied to Blevins. The Commonwealth has broad power to place even-handed restrictions on the partisan political activities of public employees like Blevins.[7] Indeed, such restrictions are deemed necessary in order to ensure that public service is determined by merit and not by patronage.[8] This power to regulate public employees extends to political expression that would be protected by the First and Fourteenth Amendments if engaged in by private persons.[9] The statute is not directed at particular, ideology-based groups or points of view but, rather, regulates political activity in an even-handed and neutral manner. KRS 121.310(1) does not prohibit Blevins from supporting the candidate of his choice, or making that support known to the public at large. Rather, it prohibits direct, partisan campaigning of those who report to him and depend on him for their livelihood. Additionally, the statute is not void for vagueness. The prohibitions contained in KRS 121.310(1) are expressed "in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with . . . ."[10]

Of course, the question of whether the statute is constitutional as applied to Blevins is not relevant to an overbroad challenge to the statute. A party is permitted to make an overbreadth challenge not because his or her "own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."[11] Permitting an overbreadth challenge is an exception to the general and basic rule that a party to whom a statute may be applied constitutionally may not attack the statute on grounds that the statute has a conceivable unconstitutional application to others.[12] The overbreadth exception should be used sparingly and as a last resort.[13] The majority errs in applying the doctrine in this case.

**7.** *See, e.g., U.S. Civil Service Comm'n v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, (1973); *United Public Workers of America v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *City of Louisville v. FitzGerald,* Ky., 600 S.W.2d 456, 457 (1978).

**8.** *Nat'l Ass'n of Letter Carriers,* 413 U.S. at 557, 93 S.Ct. at 2886, 37 L.Ed.2d at 804.

**9.** *Broadrick,* 413 U.S. at 616, 93 S.Ct. at 2918, 37 L.Ed.2d at 842.

**10.** *Fitzgerald,* 600 S.W.2d at 457.

**11.** *Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2916, 37 L.Ed.2d at 840.

**12.** *Id.,* at 610, 93 S.Ct. at 2915, 37 L.Ed.2d at 839, citing cases.

**13.** *Id.* at 613, 93 S.Ct. at 2916, 37 L.Ed.2d at 841.

In *Broadrick v. Oklahoma,*[14] the U.S. Supreme Court rejected the application of the overbreadth doctrine in similar circumstances. The appellants (state employees) in *Broadrick* were charged with violation of an Oklahoma statute that prohibited state employees from engaging in a wide range of partisan political activity. The *Broadrick* Court rejected the appellants' argument that the applicable statute had to be struck down on its face because it was overly broad. After a long analysis of cases both applying and rejecting the overbreadth doctrine, the *Broadrick* Court concluded:

> [W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. It is our view that [the Oklahoma statute] is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.[15]

Any possible overbreadth of KRS 121.310(1) is not substantial. The statute is content neutral. By regulating certain conduct, the statute furthers the important governmental interest of ensuring free elections and assuring the citizens of this Commonwealth that the voting process is fair. The statute regulates even-handedly. As previously stated, it is not directed at particular, ideology-based groups or points of view. Moreover, the statute does not apply to all persons. Rather, it regulates only employers, who comprise a small subset of the populace as a whole. This limits the reach of the statute's possible chilling effect.

While the majority opinion may be well intentioned in its defense of the free communication of political speech, its analysis of the issue and facts before this Court is flawed. For the foregoing reasons, I would reverse the Court of Appeals.

COOPER and WINTERSHEIMER, JJ., join this dissenting opinion.

---

**14.** 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830.

**15.** *Id.,* at 615–16, 93 S.Ct. at 2918, 37 L.Ed.2d at 842.